**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Martha Ann TAGGART, a/k/a Martha
Ann Robertson, a/k/a Ann,
Defendant–Appellant.**

No. 90–7558.

United States Court of Appeals,
Eleventh Circuit.

Oct. 18, 1991.

**838**

David A. Simon, Wills and Simon, Bay Minette, Ala., for defendant-appellant.

George A. Martin, Jr., Asst. U.S. Atty., Willie Huntley, Asst. U.S. Attys., Mobile, Ala., for plaintiff-appellee.

Before JOHNSON and COX, Circuit Judges, and ENGEL[*], Senior Circuit Judge.

JOHNSON, Circuit Judge:

This case arises on direct appeal following Martha Ann Robertson's[1] conviction

for counterfeiting. We affirm the conviction.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

In the spring of 1989, the defendant's husband, David Robertson, received $1,200.00 in counterfeit ten dollar bills from David Snider in return for a controlled substance called Tylox. According to the defendant, she tried unsuccessfully to get her husband to destroy the money. Mrs. Robertson's conviction stems from her role in a narcotics transaction involving the counterfeit bills in early July 1989. According to the defendant, she and her husband were at a Food World parking lot in Mobile when Keith Woods handed her husband some Tylox. She claims that she did not see any money (real or otherwise) change hands, but that she heard Woods say something to the effect that he wanted "real money" for the drugs. From Woods's statement, the defendant inferred that her husband, unbeknownst to her, had used the counterfeit bills to pay for the Tylox earlier that day. Secret Service Agent William Burch testified, however, that Woods told him that only he and the defendant were involved in this drug transaction, that it occurred in the "Hide–A–Way Lounge," and that it was the defendant who passed the counterfeit money to Woods.

The government presented evidence that tended to show that Woods was involved in this drug transaction on behalf of Allen Branum. Branum testified that Woods returned to him the night of the transaction and gave him the counterfeit bills. Branum later that week went with Donald Stuart, Jr. to a drugstore and Branum used one of the counterfeit ten dollar bills to buy some beer. Someone in the drug store took down the automobile license plate numbers of Stuart's car as Stuart and Branum left the drugstore.

---

[*] Honorable Albert J. Engel, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. The official documents in this case refer to the defendant as "Ms. Taggart"; however, her real name is Mrs. Robertson. Taggart is her maiden name.

On July 11, 1989, the Secret Service interviewed Stuart. Stuart told the Secret Service that he had nothing to do with the counterfeit money and that the individual who passed the bill at the drug store was Branum. Later that day, Agent Burch interviewed Branum. Branum initially lied, telling Agent Burch that Branum's use of the counterfeit money at the drugstore was accidental. The agent informed Branum that the cashier told him that Branum had deliberately chosen the counterfeit bill from a roll of money. Branum then admitted that he deliberately passed the counterfeit bill and told the agent that he received the money from Woods in a drug transaction. Agent Burch spoke with Woods later the same day, who corroborated Branum's story regarding the drug transaction and said he received the counterfeit bills from Mrs. Robertson. When confronted by the Secret Service, Mrs. Robertson denied any direct connection to the money. She did, however, tell the Secret Service about her husband and the money and how she convinced him to bury the money. She then led the agent to the spot where the money was buried.

### B. *Procedural History*

Mrs. Robertson was indicted in August of 1989 for possessing and passing counterfeit federal reserve notes in violation of 18 U.S.C.A. §§ 472 & 474. The jury convicted Robertson of the possession charge and acquitted her on the passing counterfeit money charge. She was sentenced to 22 months in prison.

### II. ANALYSIS

Mrs. Robertson raises two[2] colorable claims on appeal: (1) that the trial court

committed reversible error in its specific intent instruction to the jury, and (2) that her Sixth Amendment right to confront the witnesses against her was violated by the admission of the hearsay statements of Keith Woods.

### A. *Jury Charge*

Mrs. Robertson contends that the district court erred in instructing the jury on specific intent, a requirement under the count for which she was convicted. The court charged the jury that they could find specific intent and therefore convict Robertson if Robertson "knowingly failed to do an act which the law requires," *i.e.*, the court told the jury that 18 U.S.C.A. § 474 could be violated by omission. Because Robertson did not object to the instruction when it was originally delivered, we review for plain error; unless, viewing the entire record and the charge as a whole, we find "a likelihood of a grave miscarriage of justice" or a serious lack of fairness or integrity, this Court will not reverse the conviction. *United States v. Fuentes–Coba*, 738 F.2d 1191, 1196 (11th Cir.1984), *cert. denied*, 469 U.S. 1213, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985). If the standard of review were *de novo*, we might reverse the conviction. *See United States v. Parr*, 716 F.2d 796, 808 (11th Cir.1983) (§ 474 violable only by affirmative act of possession or aiding and abetting, not by omission). However, we are unable to find plain error in the instant case because there is sufficient evidence for the jury to have found that Robertson actually possessed the counterfeit bills.[3]

---

**2.** Mrs. Robertson raised two other grounds for reversal which we deem to be without merit: (1) that the district court improperly limited cross-examination of Agent Burch, and (2) that the district court permitted improper cross-examination of Robertson herself regarding the details of a prior conviction. With regard to the first contention, we find that there was sufficient cross-examination of Burch to satisfy the Sixth Amendment, that the decision to limit cross was therefore within the district court's realm of discretion, and that the district court did not abuse its discretion. *United States v. Tolliver*, 665 F.2d 1005, 1008 (11th Cir.), *cert.*

*denied*, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982). Concerning the second contention, we fail to discern any prejudice to the defendant from the district court's ruling. *United States v. Vasilios*, 598 F.2d 387, 390 (5th Cir.), *cert. denied*, 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979).

**3.** The defendant herself testified that she knew that the counterfeit money was in her abode, and that her children had played with it. David Snider testified that the defendant and her husband gave him counterfeit bills for drugs. Finally, Agent Burch testified that Keith Woods

## B. *Confrontation Clause*

 Robertson also challenges the trial court's decision to allow Agent Burch to testify about Woods's out-of-court statements. Burch testified that Woods told him that Woods bought $30 worth of marijuana in the Hide–A–Way Lounge from Robertson with Branum's legitimate $100 bill, that Robertson gave him seven counterfeit $10 bills in change which he, in turn, gave to Branum, and that Woods did not know at the time that the bills were counterfeit. Robertson alleges that this testimony violates her Sixth Amendment right to confront witnesses against her. The admission of an out-of-court statement satisfies the Confrontation Clause if (1) the prosecution can show the declarant is unavailable, and (2) the out-of-court statement bears adequate "indicia of reliability." *United States v. Chapman*, 866 F.2d 1326, 1330 (11th Cir.), *cert. denied*, 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 312 (1989). Robertson has conceded that Woods was unavailable, so we need to determine only whether Woods's statement is sufficiently reliable.

 The Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), held that a court could infer that a statement bears adequate indicia of reliability when the "evidence falls within a firmly rooted hearsay exception." *Id.* at 66, 100 S.Ct. at 2539. The government argues that Woods's statements bear sufficient indicia of reliability because they are admissible as a declaration against penal interest under Rule 804(b)(3) of the Federal Rules of Evidence. We agree. In this Circuit, there are two requirements, in addition to unavailability, for 804(b)(3) admissibility of a hearsay statement which inculpates the accused: (1) the statement must "at the time of its making ... so far tend[ ] to expose the declarant to ... criminal lia-

bility ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true"; and (2) there must be "corroborating circumstances that 'clearly indicate the trustworthiness of the statement.'" *United States v. Alvarez*, 584 F.2d 694, 701 (5th Cir.1978) (quoting Fed.R.Evid. 804(b)(3)).

Woods's statement was sufficiently against his penal interest because it implicated him in a marijuana transaction. Moreover, Woods's hearsay was sufficiently corroborated. Allen Branum testified that Woods told him that Woods received counterfeit bills from the defendant in a drug transaction.[4] Although Branum's credibility is questionable[5] and other parts of Branum's testimony conflicted with his pretrial statement to Agent Burch with respect to the details of the transaction (*i.e.*, what drug was transferred, who bought and who sold the drug), we still consider this to be sufficient corroboration.

 Finally, even if we considered Burch's testimony of what Woods allegedly told him to be inadmissible, we still could not reverse because any such error would be harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 681–84, 106 S.Ct. 1431, 1436–38, 89 L.Ed.2d 674 (1986) (denial of opportunity to cross-examine adverse witness subject to harmless error analysis). There was other convincing evidence in the record which proved Robertson's intent to use the counterfeit bills. First is the defendant's testimony that she knew that her husband had the counterfeit bills and that she badly needed drugs. This testimony implies that the defendant intended for her husband to buy drugs for her with the counterfeit bills she knew he possessed. Moreover, as mentioned earlier, Branum was allowed to testify that Woods told him that Robertson gave Woods counterfeit bills for drugs.[6]

---

told him that he had received counterfeit money from Robertson in a drug transaction.

**4.** Despite the fact that this testimony is hearsay, Robertson failed to register an objection. Therefore, we consider the testimony corroborative.

**5.** Branum testified under use immunity; he has prior convictions for assault, counterfeiting, first degree robbery, and shoplifting; and he admittedly lied to Agent Burch when he told Burch that his passing of the counterfeit bills was accidental.

**6.** *See supra* note 4.

Finally, David Snider testified on direct that he sold Tylox to the defendant and her husband and that "they" gave him counterfeit bills in payment.[7] Based on this other evidence of Robertson's intent to use the counterfeit bills, we believe any possible error in admitting Agent Burch's testimony of Woods's hearsay statement was harmless beyond a reasonable doubt.

For the foregoing reasons, we AFFIRM the conviction.

7. We hold that Snider's testimony, along with the defendant's own testimony and Branum's testimony about Woods's statement to him, renders harmless any error in admitting Woods's hearsay statement despite the fact that Snider later testified on cross that the defendant was not present when he received the counterfeit bills from the defendant's husband and despite the questionable nature of Snider's credibility (he testified under immunity, he was admittedly on drugs at the time of the events in question, and the defendant's husband contradicted Snider when the defendant's husband told Agent Burch that he was the seller, not Snider).