UNITED STATES of America, Plaintiff,

v.

Anthony BATTISTE, Defendant.

No. 93 CR 0327.

United States District Court,
N.D. Illinois, E.D.

Sept. 23, 1993.

Richard Dickinson, Donald P. Jonker, Chicago, IL, for defendant Anthony Battiste.

Daniel George Martin, James Andrew Graham, Law Offices of James A. Graham, Chicago, IL, for defendant Larry T. Taylor.

Robert S. Rivkin, U.S. Atty's Office, Chicago, IL, for plaintiff.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Anthony Battiste, his girlfriend and his "financial advisor" have been indicted on charges of conspiracy, money laundering, structured transactions, narcotics distribution and fraud. Battiste allegedly structured his cash purchases of automobiles, real estate, and home furnishings in order to conceal the illegal source of his income from a narcotics operation in Englewood. The Indictment alleges that Battiste was aided in those endeavors by several coconspirators, one of whom was Michael Engram. Michael Engram was murdered before the indictment against Battiste was returned.

### Background

The government has filed a pretrial motion seeking to admit, *inter alia*, the testimony of one Johnny Engram. According to the government, Johnny Engram would testify that his deceased brother, Michael Engram, told Johnny that he (Michael) participated in the charged conspiracy at the behest of Battiste. (Mot. to Admit at 4.) Michael allegedly told Johnny that he began distributing cocaine for Battiste in March of 1989 and that he and Battiste would bag the drugs in Battiste's home in Matteson.[1] Michael also allegedly told his brother about his participation in the purchase of the Matteson home and about Battiste's purchases of a Corvette and a Mercedes in the names of others. Thus, the government proposes to call a witness who would relate a long conversation with a deceased brother who made a myriad of claims about Battiste's operation of the criminal enterprise charged in the indictment.

Battiste understandably objects to the evidence on both hearsay and constitutional grounds. The government responds that Johnny Engram's testimony about Michael's statements is admissible against Battiste under the penal interest exception to the hearsay rule because Michael's statement not only inculpated Battiste but inculpated the deceased declarant as well. *See* Fed.R.Evid. 804(b)(3).

### Discussion

Rule 804(b)(3), in relevant part, states:

A statement which ... at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

*Id.*

While 804(b)(3) speaks only to a statement against the out-of-court declarant's penal interest (and not to a statement against the penal interest of another), the commentary provides in part as follows:

These decisions however, by no means require that all statements implicating another person be excluded from the category of declarations against interest. Whether a statement is in fact against interest must be determined from the facts of each case.

Fed.R.Evid. 804(b)(3), Advisory Committee Notes, Exception 3. The commentary goes on to illustrate this point by suggesting that such statements made while in custody may well be motivated by a desire to curry favor

---

1. Though the proffered testimony refers to the home as belonging to Battiste, the actual ownership of the home is at issue.

with the authorities and fail to qualify as reliable, while a statement made to an acquaintance would have no difficulty in qualifying as a declaration against interest.

 Should we determine that a statement satisfies the requirements of Rule 804(b)(3), our inquiry is not at an end. The Federal Rules of Evidence do not trump the Confrontation Clause. "The Confrontation Clause reflects 'the ancient faith of the common law, incorporated by the founders in the Bill of Rights, that live confrontation and cross-examination of witnesses in the courtroom is the key to finding the truth in a criminal trial.'" *United States v. Flores*, 985 F.2d 770, 780 (5th Cir.1993) (*quoting United States v. Gomez–Lemos*, 939 F.2d 326, 333 (6th Cir.1991)). The Clause preserves essential rights which trace their roots to the "beginning of Western legal culture." *Coy v. Iowa*, 487 U.S. 1012, 1015, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988).

Thus, we must also consider whether the particular guarantees of trustworthiness necessary for the admission of hearsay also satisfy the Confrontation Clause. The answer to this question must be drawn from "the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *United States v. York*, 933 F.2d 1343, 1363 (7th Cir.1991) (*citing Idaho v. Wright*, 497 U.S. 805, 820, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990)).

 In this circuit, the law on this question seems settled. A review of the recent case law indicates that statements against an unavailable declarant's penal interest that also inculpate a defendant are routinely admitted. *See United States v. Curry*, 977 F.2d 1042 (7th Cir.1992), *cert. denied sub nom., Holland v. United States*, —— U.S. ——, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993); *York*, 933 F.2d 1343; *United States v. Garcia*, 897 F.2d 1413 (7th Cir.1990). In these cases, the Seventh Circuit has repeatedly held that statements against penal interest which also inculpate the accused satisfy the strictures of Rule 804(b)(3). The court has also concluded that 804(b)(3) codifies a "deeply rooted" hearsay exception and thus satis-

fies the reliability test under the Confrontation Clause as well.

We believe that these decisions have misread F.R.E. 804(b)(3) and have seriously eroded the protections guaranteed to criminal defendants under the Confrontation Clause. The admission of a dead man's declaration, purportedly against his own penal interest, that also inculpates the accused deprives the accused of any opportunity to cross examine the witness against him. The guarantees of trustworthiness that would make us comfortable admitting the statement against the declarant are simply not present with respect to admitting the statement against the accused, Mr. Battiste. In the case now before us, the validity of Michael Engram's claims, as related to his brother Johnny, that Battiste was a ring leader of a criminal enterprise can never be tested.

## I. The Seventh Circuit's Analysis in United States v. York

The Seventh Circuit's 804(b)(3) analysis of statements against penal interest that also inculpate another is a three-pronged test. To satisfy the test, the court must find: (1) the declarant's statement was against the penal interest of the declarant; (2) the declarant is unavailable; and (3) corroborating circumstances exist indicating the trustworthiness of the statement. *United States v. Garcia*, 897 F.2d 1413, 1420 (7th Cir.1990). Of course, should the statement pass this test, the Confrontation Clause remains. Thus the essential analysis employed in *York* is more succinctly expressed in terms of a two-pronged test: (1) whether the statements meet the requirements of an hearsay exception under the above test; and if so, (2) whether they meet the requirements of the Confrontation Clause.

### A. York's 804(b)(3) Analysis

The Seventh Circuit applied this test in *United States v. York*, 933 F.2d 1343 (7th Cir.1991), perhaps the leading case in this area in this circuit, and held that the testimony of two "associates" of a dead coconspirator by the name of Gail Maher, to the effect that Maher told them that she and the Defendant York had conspired to commit the

crimes charged in the indictment was admissible as a declaration against penal interest under Fed.R.Evid. 804(b)(3). *York*, 933 F.2d at 1360–61. The Seventh Circuit relied in part upon the commentary quoted above in finding that a dead person's statement to "an associate" easily met the standard of a declaration against penal interest, and in part on the supposition that, in implicating the defendant York, the out-of-court declarant "demonstrated her inside knowledge of the planned crime." *Id.*, 933 F.2d at 1361.

## B. *York's Confrontation Clause Analysis*

In *York*, the Seventh Circuit also found that the admission of a deceased's statement against interest which also inculpated an accused satisfied the strictures of the Confrontation Clause for two reasons. First, the court felt that the statement met the requirements of a "firmly rooted" hearsay exception, and was therefore presumed to be reliable. *Id.* at 1363. Second, it felt that the circumstances of the statement gave it an air of trustworthiness sufficient to satisfy the Confrontation Clause. *York*, 933 F.2d at 1362–63.

## II. *Problems with the York Analysis*

In our view the *York* decision bears an eerie resemblance to the infamous trial of Sir Walter Raleigh. There, Raleigh was convicted of high treason because the court admitted an affidavit of an unavailable alleged coconspirator, Lord Cobham. Cobham's affidavit asserted that both he and Raleigh had been involved in a conspiracy to overthrow Elizabeth I and place Arabella Stewart on the English Throne. Raleigh begged the court to permit him to cross examine Cobham, who was then imprisoned in the Tower of London.[2] Raleigh was denied that opportunity and was convicted of treason.

Ironically, the trial is often used to illustrate the evolution of our rules of evidence from the barbaric to the enlightened. *See, e.g.*, John Kaplan, Jon R. Waltz, and Roger Park, *Evidence: Cases and Materials* (7th ed. 1991). We are at a loss to explain how allowing Maher's statement into evidence in *York* (or, for that matter, Michael Engram's statement in the present case) is any different from using Lord Cobham's affidavit against Raleigh.[3] It would seem apparent that the underlying problem inherent in both *York* and Sir Walter Raleigh's cases is the right to confront witnesses. In our view, admitting out-of-court accusations by an unavailable declarant collides with the intent of the Confrontation Clause:

> The primary objective of the [Confrontation Clause] was to prevent depositions or *ex parte* affidavits ... being used against the prisoner in lieu of a personal examination and cross-examination of the witness....

*Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). Thus, we undertake to provide a principled analysis of the *York* decision in hope that our questioning of the wisdom and equity of its result will lead to a renewed discussion of this issue.

## A. *Was Maher's Statement Inculpating York Against Her Penal Interest?*

Our questioning of *York* begins with its finding that Maher's entire statement was a declaration against her penal interest. We believe that to be a mistaken reading of 804(b)(3). Rule 804(b)(3) permits statements made against the declarant's own penal interest. It makes no mention of statements inculpating another.[4]

The commentary that indicates those statements are also admissible ignores the rationale for the 804(b)(3) exception—statements against one's own penal interest are reliable. We believe that F.R.E. 804(b)(3) as drafted does not, by its plain terms, include out-of-court assertions against another's pe-

---

**2.** Imprisoned witnesses were apparently considered unavailable at that time.

**3.** While one can cross examine Johnny as to whether the statement was made, he cannot be cross examined as to its truthfulness.

**4.** Rule 804(b)(3) does treat the question of declarations against penal interest which are offered to exculpate the accused. In that situation, substantial corroboration is required. Fed.R.Evid. 804(b)(3).

nal interest. A declarant's motivations for implicating herself seem unimportant; what matters is that she did so. Rational individuals do not usually do so unless it is true. However, inculpating another while also making a statement against your own penal interest simply does not have the same reliability. "Invoking another's name might be gratuitous, or said in the interest of avoiding responsibility and shifting the blame, or exaggerating to impress a listener." Paul R. Rice, *Evidence: Common Law and Federal Rules of Evidence*, § 5.01 at 434 (2d ed. 1990) (*quoting* Comment, *Inculpatory Declaration Against Penal Interest and the Coconspirator Rule Under the Federal Rules of Evidence*, 56 Ind.L.J. 151, 168 (1980)).

As the Defendant argued in *York*, the deceased's statement was really two statements. The first implicated the declarant herself ('I am going to burn down the lounge'), while the second implicated the defendant, Mr. York ('So is York'). Thus, the defendant argued that the portion implicating him was not admissible under 804(b)(3) because it did not subject the declarant to criminal liability. In other words, Maher's statement about York's participation in the crime did not affect her criminal liability because that liability was the same whether or not York participated in the conduct.

Certainly, that argument has merit. The basis for finding a declarant's statement "I robbed the bank" reliable is that the declarant would be a fool to say that if it were not true. On the other hand, when a declarant says "I robbed the bank with X," it is not so clearly against the declarant's penal interest to include X in his statement. Courts have recognized the difficulty inherent in this issue. *See e.g., United States v. Innamorati*, 996 F.2d 456, 474 (1st Cir.1993) (recognizing the difficulty of dividing an inculpatory statement against penal interest). Where a portion of the statement, such as the declarant's

statement that X also robbed the bank, is not against the declarant's penal interest, some courts and commentators reject that portion of the statement. *See* John W. Strong, *et al., McCormick of Evidence*, § 319 at 345 (4th ed. 1993). Generally, however, courts will admit the entire statement if the two portions are reasonably closely related. *Id.* (*citing United States v. Casamento*, 887 F.2d 1141 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990)).[5]

The *York* court rejected the "two statement" approach, finding that in implicating the defendant York, the out-of-court declarant "demonstrated her inside knowledge of the planned crime." *Id.*, 933 F.2d at 1361. This analysis, by no means unique to the *York* opinion, is a peculiar way to justify the admissibility of the declaration against the defendant. A crime was committed. The out-of-court declarant talked about it with an associate before hand. If one assumes the earlier statement is true, as the court did in *York*, then by definition it showed inside knowledge. We assume it is true because a portion of it was against the declarant's penal interest. But why would we assume that the portion of the statement that inculpated York, which was in no way against the declarant's own penal interest, is true? We believe that the commentary to the Rule that suggests that these statements are admissible ignores this critical distinction. The commentary expands the scope of the clear language of the Rule while it ignores the rationale underlying it.[6]

### B. *Firmly Rooted Hearsay Exception?*

Once the *York* court decided that Maher's statement met the requirements of 804(b)(3), it admitted the evidence under the Confrontation Clause on two grounds. First, because it met the requirements of 804(b)(3), a

---

5. We fail to understand why, merely because two portions of a statement are "closely related," that fact somehow makes the portion inculpating another also against the declarant's penal interest or for that matter, reliable.

6. It is a poor answer to this problem to suggest, as some authorities have, that the decision can simply be made on a case by case basis. The

declarant is by definition unavailable and it is next to impossible to attempt to fathom the declarant's reason for accusing another. In fact, it is difficult for us to imagine a circumstance where inculpatory hearsay statements such as those made in the present case are supported by sufficient indicia of reliability to satisfy the Constitution.

firmly rooted hearsay exception, the statement was presumably reliable as a matter of law. Second, the circumstances of the statement made it reliable in fact.

As to the first *York* rationale, the Supreme Court has made it clear that in determining the admissibility of hearsay statements under the Confrontation Clause, "no independent inquiry into reliability is required when 'the evidence falls within a firmly rooted hearsay exception.'" *Id.* at 1362 (*citing Bourjaily v. United States,* 483 U.S. 171, 182–83, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987)). The rationale for this approach is obvious: the test for allowing exceptions to the hearsay rule is that "the statement offered is free enough from risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation." *Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990) (*quoting* 5 J. Wigmore, *Evidence,* § 1420 p. 251 (J. Chadbourne rev. 1974)). Thus, if the penal interest exception is a "firmly rooted" hearsay exception, the reliability of statements that fall into this category has withstood the test of time and are presumed to be reliable.

In *York,* the Seventh Circuit held that the hearsay exception for statements against penal interest is "well-rooted:"

The hearsay exception for declarations against interest is firmly established; it rests upon "the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect."'

*Id.* at 1363 (*citing Lee v. Illinois,* 476 U.S. 530, 551, 106 S.Ct. 2056, 2067, 90 L.Ed.2d 514 (1986) (Blackmun, J. dissenting)). Thus, the court held that because the statement fit the requirements of a declaration against penal interest, it was presumably reliable.

We respectfully disagree with *York*'s assertion that the hearsay exception for statements against penal interest is "firmly rooted," as we believe it to be a misinterpretation of history, and more importantly, what the Supreme Court means by a "firmly rooted hearsay exception." *Bourjaily v. United States,* 483 U.S. 171, 182–83, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987) (explaining *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65

L.Ed.2d 597 (1980)). The essence of the "firmly rooted" analysis is that the exception at issue has shown its reliability over a long period of time:

Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements.

*Wright,* 497 U.S. at 805, 110 S.Ct. at 3141. *See also, Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895); *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. In *Bourjaily,* the Court looked to its jurisprudence dating back to 1827 to find that the hearsay exception for admission of co-conspirator statements was "firmly rooted." 483 U.S. at 183, 107 S.Ct. at 2782 (*citing United States v. Gooding,* 12 Wheat. 460, 6 L.Ed. 693 (1827)).

The penal interest exception, on the other hand, has no similar historical roots. To the contrary, the penal interest exception to the hearsay rule is an extremely new expansion of the statement against interest rule. At English common law, the courts ruled in the mid-nineteenth century that there was no exception to the hearsay rule for statements against penal interest. *See, e.g., Sussex Peerage Case,* 11 Cl. & F. 85, 110 (1844); *Davis v. Lloyd,* 1 C & K. 276 (1844); *Papendick v. Bridgwater,* 5 E. & B. 166, 180 (1855). In America, though a hearsay exception existed for statements against pecuniary or proprietary interest, there was no exception for statements against penal interest. *See* 5 J. Wigmore, *Evidence,* § 1746 p. 352–58 (J. Chadbourne rev. 1974).

American courts tended to follow the *Sussex Peerage* case and exclude such statements in criminal cases. *See* John W. Strong et al., *McCormick on Evidence,* § 318 at 340 & n. 3 (4th ed. 1992) (citing cases). In fact, the use of a statement against penal interest that was exculpatory of the defendant was rejected by the Supreme Court in 1913. *See Donnelly v. United States,* 228 U.S. 243, 273–74, 33 S.Ct. 449, 459, 57 L.Ed. 820 (1913).

The use of statements against penal interest against an accused who is not the declarant is an even more recent development in the law of evidence. Even as recently as the late 1960's, the first draft of the Federal Rules of Evidence specifically excluded from admissibility inculpatory statements against penal interest that inculpated another. *See* 4 Weinstein & Berger, *Weinstein's Evidence*, ¶ 804(b)(3) at 804–140 (1992) (noting that early drafts of Rule 804 excluded "a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused."); Preliminary Draft, Rule 8–04(b)(4) (March 1969), 46 F.R.D. 161, 378 (1969). The Revised Uniform Rules (1986) exclude such evidence, and several states, either by decision or rule, maintain the ban. *See State v. Boyd*, 214 Conn. 132, 570 A.2d 1125, 1128 (1990); *State v. Parris*, 98 Wash.2d 140, 654 P.2d 77, 87 n. 4 (1982) (Williams, J. dissenting) (citing states that forbid admission of inculpatory declarations against interest). Though the explicit ban on such evidence was removed from the final version of 804(b)(3), the commentary to the Rule expressly states that "[t]he rule does not purport to deal with questions of the right to confrontation." 804(b)(3), Advisory Committee Notes, Exception 3.

In support of its remarkable holding that the penal interest exception is firmly rooted, the *York* opinion cites the dissent in *Lee*. *York*, 933 F.2d at 1363 (*citing Lee*, 476 U.S. at 551–52, 106 S.Ct. at 2067–68 (Blackmun, J., dissenting)). In *Lee*, the Supreme Court had the opportunity to find that the penal interest exception was "firmly rooted." However, it declined the opportunity:

> We reject respondent's categorization of the hearsay involved in this case as a simple 'declaration against penal interest.' That concept defines too large a class as for meaningful Confrontation Clause analysis. We decide this case as involving a confession by an accomplice which incriminates a criminal defendant.

*Lee*, 476 U.S. at 544 n. 4, 106 S.Ct. at 2064 n. 4 (reversing conviction where inculpatory statements of codefendant used as substantive evidence against defendant without sufficient indicia of reliability).

The Seventh Circuit's reliance on the dissent in *Lee* for support of its finding that the penal interest exception is "firmly rooted" cannot be taken seriously in light of the majority's rejection of that very idea. Even if it were binding authority, the dissent does not support the *York* finding for several reasons. First and foremost, what Justice Blackmun really said in *Lee* is that the penal interest rule is commonly accepted by modern courts, not that it is firmly rooted in history. Certainly, Justice Blackmun's argument that the hearsay exception for statements against penal interest is "firmly established," in the sense that most modern courts accept it, cannot be seriously challenged. However, there is a crucial distinction between saying that the exception is generally accepted today and saying that it is a "firmly rooted" doctrine with its foundations in the common law. In fact, Justice Blackmun recognized that the exception is a fairly new development. *See Lee*, 476 U.S. at 551 n. 4, 106 S.Ct. at 2068 n. 4 (Blackmun, J., dissenting).

Other courts agree that "a confession by an accomplice inculpating a defendant that is being offered as a declaration against penal interest is not a firmly rooted exception." *United States v. Flores*, 985 F.2d 770, 775 (5th Cir.1993);[7] *State v. Parris*, 98 Wash.2d 140, 654 P.2d 77 (1982) (statements inculpating declarant and defendant not firmly rooted but must be supported by particularized guarantees of trustworthiness under Confrontation Clause). *See also United States v. Nazemian*, 948 F.2d 522, 532 (9th Cir.1991) (court expressly declined to decide whether statements against penal interest were a deeply rooted hearsay exception, because the Supreme Court had yet to decide the issue and corroborating circumstances in the case provided sufficient indicia of reliability to meet confrontation clause requirements).

---

7. In *Flores*, the Fifth Circuit also found that the penal interest exception "defines too large a class for meaningful Confrontation Clause analysis," *id.* at 775–76 (*citing Lee*, 476 U.S. at 544 n. 5, 106 S.Ct. at 2064 n. 5), and held that such statements must be subject to case-by-case analysis to determine their reliability. *Id.* at 776.

*But see, United States v. Innamorati,* 996 F.2d 456, 474 n. 4 (1st Cir.1993) (citing *York* alone for the proposition that "[m]ost courts have concluded that the declaration against interest exception ... is a 'firmly rooted' exception."); *United States v. Katsougrakis,* 715 F.2d 769, 776 (2d Cir.1983) (penal interest exception is deeply rooted). *Cf. United States v. Bakhtiar,* 994 F.2d 970, 978 (2d Cir.1993) (declining to reaffirm its earlier holding in *Katsougrakis* that 804(b)(3) is a "firmly rooted" exception, perhaps in light of *Flores* ).

## C. *Sufficient Indicia of Reliability?*

■ As we make clear above, we are of the firm opinion that 804(b)(3) is not a "firmly rooted" hearsay exception, and thus does not carry with it inherent assurances of reliability sufficient to obviate an independent inquiry into corroboration. To the contrary, it is "presumably unreliable." *Lee,* 476 U.S. at 543, 106 S.Ct. at 2063. We now move on to the second basis for the admission of the out-of-court statement in *York,* that the circumstances in which it was made rendered it "eminently trustworthy." *York,* 933 F.2d at 1362–63.

■ As we noted above, the Seventh Circuit's analysis of statements against penal interest that also inculpate another is a three-pronged test: (1) the declarant's statement was against the penal interest of the declarant; (2) the declarant is unavailable; and (3) corroborating circumstances exist indicating the trustworthiness of the statement. *Garcia,* 897 F.2d at 1420. Other circuits are in agreement with this three-pronged analysis. *See United States v. Flores,* 985 F.2d 770 (5th Cir.1993); *United States v. Taggart,* 944 F.2d 837 (11th Cir. 1991); *United States v. Stratton,* 779 F.2d 820, 828 n. 7 (2d Cir.1985), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986).

However, the Seventh Circuit parts company with its sister courts in the application of the corroboration requirement in its recent decisions. Under that requirement, several circuits have imposed a more exacting

reliability analysis upon statements that inculpate others. *See, e.g., United States v. Boyce,* 849 F.2d 833 (3d Cir.1988) (statements excluded under reliability analysis where made in police custody); *United States v. Riley,* 657 F.2d 1377, 1384 (8th Cir.1981), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983) (custodial statement); *United States v. Sarmiento–Perez,* 633 F.2d 1092 (5th Cir.1981) (broad reading of statement against penal interest exception may conflict with requirements of Confrontation Clause), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 75 (1982); *United States v. Alvarez,* 584 F.2d 694 (5th Cir.1978) (insufficient reliability of statement runs afoul of Confrontation Clause even where it is sufficiently incriminating to fit requirements of hearsay exception). *Cf. United States v. Candoli,* 870 F.2d 496 (9th Cir.1989) (declining to decide whether corroboration is required for inculpatory statements but noting that other circuits have imposed the requirement under the Confrontation Clause). Thus, while the Seventh Circuit joins the other circuits in facially requiring corroboration of inculpatory penal interest statements, *see, Garcia,* 897 F.2d at 1420 (citations omitted), it stands alone in declining to apply the requirement in a meaningful fashion.

In *York,* the court claimed to make at least some inquiry into the circumstances surrounding Maher's alleged statement to determine whether Maher's statements were, in fact, against her penal interest, and if so, whether they were sufficiently reliable to satisfy the requirements of the Confrontation Clause. The court felt that because the statement was made to "acquaintances unconnected to law enforcement," it was "eminently trustworthy." *York,* 933 F.2d at 1362. The sole foundation of the reliability of Maher's statement apparently rested upon the fact that the statements were made to an "associate" or an "acquaintance." *York,* 933 F.2d at 1360, 1362. *York* gives no indication of the nature of Maher's relationship with the recipients beyond those rather cryptic terms, which could imply a business, personal or criminal relationship, nor does it discuss the circumstances of the conversation.[8]

---

8. In *Garcia, York* 's predecessor, the inculpatory

statement was made during the course of custo-

■ Despite that near total lack of information crucial to corroboration of Maher's statement, the court simply found that because Maher was "speaking to acquaintances unconnected to law enforcement," her statement was "eminently trustworthy." *Id.* at 1362–63.[9] In so holding, the court relied on the position of the Advisory Committee, which felt that a statement against penal interest made to an acquaintance "would have no difficulty in qualifying" for admission under 804(b)(3). Thus, because the statement was against Maher's interest, was made to acquaintances, and did not "attempt to diminish" Maher's own role in the crime, the court found that "there is little reason to suspect" that the statement was unreliable. *Id.* (citation omitted).

The result of the analysis in *York,* is that though the court at least facially requires corroboration, it assumes it for purposes of the hearsay analysis without any meaningful inquiry into the circumstances surrounding the statement. Worse, the assumed reliability under the hearsay exception allows the court to bootstrap the statement past the Confrontation Clause by asserting the reliability for hearsay purposes (because it fits a "deeply rooted" exception) suffices for the Constitution as well.

The *York* analysis has the effect of totally eviscerating the Confrontation Clause and avoiding the intent of Congress in removing the prohibition on these statements from the Rules. A portion of 804(b)(3) that would have prohibited the use of declarations against interest that inculpate the defendant was deleted in order to "avoid codifying, or attempting to codify, constitutional evidentia-

ry principles...." S.Rep. No. 93–1277, 93rd Cong., 2d Sess., *reprinted in,* 1974 U.S.C.C.A.N. 7051, 7068. The clear intent of this deletion was to leave defendant's confrontation rights in the hands of constitutional analysis. However, the *York* analysis effectively nullifies the Constitution by first assuming reliability in the hearsay analysis and finding that assumption sufficient to satisfy the Constitution as well.

## III. *The Confrontation Clause*

There can be no doubt that the Confrontation Clause bars admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. *Wright,* 497 U.S. at 814, 110 S.Ct. at 3146. *See also California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). However, the Confrontation Clause does not serve as an impregnable barrier to the admission of any and all hearsay evidence. *Wright,* 497 U.S. at 813, 110 S.Ct. at 3145; *Mattox,* 156 U.S. at 243, 15 S.Ct. at 340; *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). A literal reading of the Clause would bar use of any out of court statement, a result that is "unintended and too extreme." *Bourjaily,* 483 U.S. at 182, 107 S.Ct. at 2782; *Ohio v. Roberts,* 448 U.S. 56, at 63, 100 S.Ct. 2531, at 2537 (same).

To the contrary, the hearsay rule and the Confrontation Clause often protect the same interests. "The theory behind the hearsay rule is that 'the many possible sources of inaccuracy and untrustworthiness which may

dial interrogation and without the assistance of counsel, circumstances that have caused other courts to view inculpatory statements with heightened suspicion. *See, e.g., United States v. Boyce,* 849 F.2d 833, 836 (3d Cir.1988); *United States v. Riley,* 657 F.2d 1377, 1384 (8th Cir. 1981), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983); *United States v. Sarmiento–Perez,* 633 F.2d 1092, 1102 (5th Cir. Unit A 1981). However, rather than examine those circumstances further, the court presumed that the statements were sufficiently reliable: "[t]here is nothing in the record that indicates [the declarant] was motivated by a desire to curry favor with his interrogators." *Id.* The *Garcia* court also found that inculpatory statements against interest fell within a firmly rooted hearsay excep-

tion, and thus made what we feel to be the same error made by the *York* court. *Garcia,* 897 F.2d at 1421. On that basis of that presumption, the court found that no separate analysis was required by the confrontation clause: "we concluded that the statements were supported by sufficient corroborating evidence. That evidence also satisfies the required reliability for confrontation clause purposes." *Id.* at 1421.

9. We are aware that precisely what corroboration is required has been somewhat uncertain. *See McCormick,* § 319 at 347 n. 23 (collecting cases). However, some meaningful attempt at analysis is clearly called for.

lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, by the test of cross-examination.'" *Flores,* 985 F.2d at 777 (*citing* 5 Wigmore, § 1420 at 25). Both the hearsay rule and the Confrontation Clause may give way, however, where a particularized basis for trustworthiness arises in a given set of circumstances. Thus, there clearly is some overlap and interplay between hearsay rules and the protections provided by the Confrontation Clause: confrontation, like hearsay exclusion, is not always required if the statement is "so trustworthy that adversarial testing would .add little to [its] reliability." *Id.* (*citing Wright,* 497 U.S. at 821, 110 S.Ct. at 3149).

■ In sum, an inculpatory hearsay statement may be admitted where the statement carries with it sufficient "indicia of reliability." *Roberts,* 448 U.S. at 65–66, 100 S.Ct. at 2539. The "indicia of reliability" requirement can be met in one of two ways. *Wright,* 497 U.S. at 816, 110 S.Ct. at 3147. First, the statement may be admitted when it "falls within a firmly rooted hearsay exception." *Id.* If the statement does not fall within such an exception, it is "presumptively unreliable," but may be admitted where it that presumption is rebutted by "a showing of particularized guarantees of trustworthiness." *Wright,* 497 U.S. at 816, 110 S.Ct. at 3147 (*citing Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539). *See also Bourjaily,* 483 U.S. at 183, 107 S.Ct. at 2782 (co-conspirator exception to hearsay rule firmly rooted); *Lee v. Illinois,* 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986) ("Even if certain hearsay evidence does not fall within 'a firmly rooted hearsay exception' and is thus presumptively unreliable and inadmissible for Confrontation Clause purposes, it may nonetheless meet Confrontation Clause reliability standards if it is supported by a 'showing of particularized guarantees of trustworthiness.'") (citation and footnote omitted).

We have grave doubts that an out-of-court statement accusing another of the commission of a crime can ever be made under circumstances which are so trustworthy that

adversarial testing would add little to its reliability. The out-of-court assertion offered by the government in *York* went to the heart of the case of the case against the accused. It directly charged the Defendant with having committed the crime for which he was on trial. The out-of-court declarant is by definition unavailable and thus cannot be cross examined. Even if the out-of-court accusation is made under oath, as was Lord Cobham's affidavit, or made to an unimpeachable listener, the fact remains that there exists no opportunity for the Defendant to cross examine his accuser. Gail Maher's bias, first hand knowledge, memory, prior bad acts or convictions can never be presented to the jury. We do not believe that, under such circumstance, cross examination could ever be labelled "supererogation." *Wright,* 497 U.S. at 819, 110 S.Ct. at 3149. There will almost always be too great a risk of inaccuracy and untrustworthiness. *Id.*

## IV. *Our Analysis of the Present Case*

■ Having expressed our anxiety over the *York* analysis and our view of what we believe to be the controlling law in this area, we turn to whether the circumstances surrounding Michael Engram's statements endow it with sufficient indicia of reliability to satisfy the hearsay rule and the Confrontation Clause. Our analysis of these issues comports with *York* as well as addresses our concerns about the dangers of its analysis. Of course, we are bound by *York* to the extent it is not contrary to the Constitution or to Supreme Court precedent, and to that extent we must tailor our analysis to its dictates. However, the ban on inculpatory statements against penal interest was removed from Rule 804(b)(3) because Congress believed the decision should be made on a case-by-case basis. 56 F.R.D. 183, 328 (1973). Thus, our review of the law and the facts of our case demonstrate that we may comfortably bar admission of Michael Engram's alleged statements from within the framework of *York* and *Garcia* because we find that the statement was not made in circumstances endowed with sufficient indicia of reliability.[10]

10. It is well-established that the trial court has

considerable discretion in determining whether

The facts of *York* are quite similar to those in the present case. However, a close analysis of the facts here demands a different result. Of course, the particular guarantees of trustworthiness necessary for admission under the Confrontation Clause must be drawn from "the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *York*, 933 F.2d at 1363 (*citing Idaho v. Wright*, 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990)). It is on this point that the facts of the present case diverge from those of *York*, and, upon review of the totality of the circumstances surrounding Michael Engram's alleged statement, we hold that *York* does not control.

 Our first inquiry must be whether Michael's statement to Johnny was actually against his penal interest. *Garcia*, 897 F.2d at 1420. The key to admissibility under 804(b)(3) is, of course, whether a reasonable person in the place of the declarant would fear that making the statement put him or her at an appreciable risk of criminal liability. F.R.E. 804(b)(3). *See also York*, 933 F.2d at 1360; *Garcia*, 897 F.2d at 1420. As explained below, we find that the circumstance surrounding the alleged statement in this case indicate the Michael Engram did not put himself at any real risk of criminal liability in telling Johnny Engram about his involvement with Battiste and that insufficient indicia of reliability surround the alleged statements.

Revealing incriminating information to an "associate," as in *York*, or an "acquaintance" as in the Advisory Committee notes, may well entail a great deal of risk. The terms "associate" and "acquaintance" imply a non-intimate relationship, whether casual or business-related, where one party has little knowledge and/or control over the other. Thus, a declarant would have no way of knowing whether the recipients of the incriminating information, be they "associates" or "acquaintances," will react by later using the statement against her; for all the declarant knows, the recipient could be married to a police officer or even be an informant. That essential element of risk is the rationale behind the reliability of declaration against penal interest and the reason they are an exception to the hearsay rule.

In the present case, we doubt that Michael's statements, at least to the extent they implicate Battiste, were against his penal interest in any significant fashion. Michael's alleged statements to his brother about his involvement with Battiste were made in circumstances that indicate he took only a very small risk of criminal liability in telling his brother Johnny his tale. Common sense dictates that "[a] relation of trust and confidence between speaker and listener ... militates against awareness that the making of the statement might be against declarant's penal interest." John W. Strong *et al.*, *McCormick on Evidence* § 319 at 345 (4th ed. 1992).

 Though the courts have held that the mere fact that the recipient was a confidante of the declarant does not rule out admissibility of statements against interest, *see, e.g., United States v. Goins*, 593 F.2d 88, 92 (8th Cir.) (revelation to daughter admissible), *cert. denied*, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979); *United States v. Bagley*, 537 F.2d 162, 165 (5th Cir.1976) (friend and cellmate); *United States v. Barrett*, 539 F.2d 244, 251–52 (1st Cir.1976) ("in the course of a conversation with friends over cards...."),[11] more is at work here between

---

hearsay statements contain the required guarantees of trustworthiness. *Garcia*, 897 F.2d at 1421.

**11.** Incredibly, some courts have taken the counterintuitive position that the existence of a confidential relationship between the declarant and the recipient adds to the trustworthiness of the statement under the declaration against penal interest exception. *See, e.g., United States v. Katsougrakis*, 715 F.2d 769, 775 (2d Cir.1983) (statements made to friend as declarant approached death reliable); *United States v. Brainard*, 690 F.2d 1117, 1125 (4th Cir.1982) (statement made to secretary, who declarant had no reason to believe would disclose the information to others, increased reliability of statement); *United States v. Badalamenti*, 626 F.Supp. 658, 666 (S.D.N.Y. 1986) (statements made to organized crime figures, who operated under 'code of silence' increased reliability).

Johnny and Michael than a mere familial relationship. In fact, it may have actually been in Michael's interest to fabricate his tale about his involvement with Battiste.

The government's *ex parte* submission indicates that Battiste is a "governor" in the Gangster Disciples street gang. Johnny Engram was not only Michael's brother but was also considered, at one time prior to the conversation with Michael, Battiste's "right hand man" in alleged criminal activities as well as an associate of the gang. Given the street gang culture, where members are elevated and revered based upon criminality, it would have served Michael Engram's best interests to brag about his association with Battiste, a high-ranking member, to his brother and fellow Gangster Disciple, Johnny. *But see Badalamenti*, 626 F.Supp. at 666 (statements made to organized crime figures, who operated under 'code of silence,' increased reliability).

Further distinguishing this case from *York* is that fact that Michael apparently told Johnny he participated in the criminal activity at the behest of Battiste, a statement that certainly could be viewed, in the alternative, as an attempt to diminish his own criminal responsibility:

> A statement conceding a minor role to declarant and attributing to another the major responsibility resembles more an attempt to foist blame on the other while minimizing declarant's responsibility, and thus the statement as a whole advances far more than it impairs the interests of the declarant, hence lying outside the instant exception [Fed.R.Evid. 804(b)(3)] if offered to prove the other's conduct.

4 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 489, at 1141 (1980) (discussing Fed.R.Evid. 804(b)(3)). *Cf. York*, 933 F.2d at 1363 (declarant did not attempt to diminish her own role in crime). Thus, unlike in *York*, here we have facts that affirmatively suggest that the out-of-court statement may be unreliable.

We doubt Michael's statement meets the requirement of the rule here, where the lack of any appreciable risk of criminal liability removes the inherent reliability normally found in an 804(b)(3) declaration and where the declarant may have attempted to diminish his own responsibility for the crime. *But see, United States v. Harrell*, 788 F.2d 1524, 666 (11th Cir.1986) (no requirement that declarant know that he is speaking with person who could subject him to prosecution).

█ Having discarded the presumption of reliability afforded the hearsay statements in the distinct factual setting of *York*, we must find sufficient indicia of reliability to meet the requirements of the Confrontation Clause, a task we cannot complete on the record as it now stands. Certainly, we view declarations against penal interest that inculpate another with inherent suspicion in determining their reliability. *See, e.g., Lee*, 476 U.S. at 539, 106 S.Ct. at 2061. The undeniable possibility which arises from the unique facts of this case that Michael's statements were mere puffery only increases our suspicions.[12] *See York*, 933 F.2d at 1361 (reliability analysis for hearsay exception and for Confrontation Clause is the same).

### Conclusion

As we have recognized, the Confrontation Clause is not an impregnable barrier to admissions of hearsay evidence. In the present case, however, we are at a loss to explain how admitting Michael Engram's alleged statement against Battiste, which we have found does not fit the definition of a statement against penal interest, is any different for Confrontation Clause purposes from the admission of the confession of the non-testifying codefendant's confession in *Bruton*. 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Though the Seventh Circuit has hinted that *Bruton* has been so severely eroded as to no longer represent the state of the law, *see York*, 933 F.2d at 1362 & nn. 2–3, we respectfully disagree. *Bruton* remains the law on the facts presented therein. *See*

12. Though the parties have suggested that we may consider external evidence in deciding whether Michael's statement was sufficiently corroborated, we may not do so. To the contrary, we may look only to the circumstances of the statement itself. *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

**1008**

*Wright,* 497 U.S. at 814, 110 S.Ct. at 3146 (*citing Bruton* for proposition that Confrontation Clause limits hearsay exceptions). Indeed, the Supreme Court noted in *Lee* that the out-of-court statement offered there, though technically a statement against penal interest, would be analyzed as a confession by an accomplice that inculpated another, precisely the situation in *Bruton. Lee,* 476 U.S. at 544 n. 4, 106 S.Ct. at 2064 n. 4.

Where inculpatory hearsay evidence is neither within a "firmly rooted" hearsay exception nor bears sufficient "indicia of reliability," the Confrontation Clause will bar its admission. Thus, because we find that Michael Engram's statement to Johnny Engram is not within a "firmly rooted" hearsay exception and does not possess sufficient "indicia of reliability," it is inadmissible under 804(b)(3) and the Confrontation Clause.