[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 14, 2008
THOMAS K. KAHN
CLERK

No. 06-15812
Oral Argument Calendar
_____

D.C. Docket No. 05-00538-CR-2-RDP-TMP

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                versus

SOHAIL IGBAL ISSA,
PARVEZ IGBAL ISSA,
a.k.a. Habib,

                              Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(February 14, 2008)**

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and ALTONAGA*, District Judge.

PER CURIAM:

Parvez Igbal Issa ("Parvez") and his brother, Sohail Igbal Issa ("Sohail"), appeal their convictions and sentences of imprisonment arising from a multi-count indictment charging offenses relating to the sale and distribution of pseudoephedrine to be used for the manufacture of methamphetamine. After reviewing the issues on appeal, we affirm their convictions and sentences.

## A. BACKGROUND

A five-count indictment was returned on December 2, 2005 against Parvez and Sohail. Count One charged Defendants with conspiracy to "knowingly, intentionally, and unlawfully manufacture a mixture and substance containing a detectable amount of methamphetamine," in violation of 21 U.S.C. §§ 846, and 841(a)(1) and (b)(1)(A). On specific dates listed, Counts Two and Three charged Parvez, and Count Four charged Parvez and Sohail, with distributing a "listed chemical, that is, pseudoephedrine, knowing, or having reasonable cause to believe, that [it] would be used to manufacture . . . methamphetamine," in violation of 21 U.S.C. § 841(c)(2). Count Five charged Parvez with knowingly and

_____

*Honorable Cecilia M. Altonaga, United States District Judge for the Southern District of Florida, sitting by designation.

2

unlawfully entering the United States, in violation of 8 U.S.C. § 1325(a)(1).[1] The jury found Parvez guilty of all counts, but the court later dismissed Count Five. The jury found Sohail not guilty of Count One and guilty of Count Four.

At trial, and over defense objection, the government presented evidence that in early 2005, Sergeant Bobby Smith of the Pelham Police Department began an investigation after receiving complaints of possible drug activity at a BP gas station located on Highway 31 in Pelham, a business owned by Parvez. Sergeant Smith focused his investigation on Chris Nickell, the individual identified as the purchaser of pseudoephedrine from the BP station. Upon his arrest following an undercover investigation, Nickell, a methamphetamine addict who had learned how to manufacture the drug,[2] agreed to cooperate.

According to Nickell, about a year before his arrest, he became a regular customer of the BP station. After he noticed boxes of pseudoephedrine on the wall, Nickell asked Parvez if he could get the "Pseudo 60s," pointing to some empty boxes. Nickell also told Parvez he wanted to buy large quantities of the product to make "crystal meth." Starting approximately two weeks later, Nickell began purchasing two cases, each containing 12 bottles of 36 pseudoephedrine pills,

_____

[1] Defendants were born in Pakistan; Sohail entered the United States legally while Parvez did not.

[2] According to Nickell, he used from 15 to 20 packs of pseudoephedrine (36 pills to a pack) each time he manufactured methamphetamine.

about once or twice a week, for about six weeks.  The transactions were conducted without the use of the cash register.

Because Parvez was sometimes absent from the store, Nickell asked Parvez to inform whoever was present in Parvez's absence about the purpose of Nickell's visits.  Nickell later identified Sohail as the individual who would sell him the drugs whenever Parvez was absent.[3]  Nickell estimates he made purchases from Sohail on four or five occasions, also without the use of the cash register.

Several weeks after his arrest, and at Sergeant Smith's direction, Nickell returned to the BP station to see if Defendants were still willing to sell to him.  To explain his absence, Nickell told Parvez he had found another and cheaper source, and to this Parvez responded he did not want to lose Nickell's business.  Parvez offered to sell, and Nickell agreed to buy the pseudoephedrine for $8.50 per 36-count pack, down from an earlier price of $10 a pack.

On October 6, 2005, Nickell, wired with a transmitter and provided with cash by the officers, went to the BP station and bought 12 blister packs for $102, in cash and without use of the cash register.  Before giving Nickell the 12 blister

_____

[3] After Sohail's arrest, Nickell positively identified Sohail as the individual who, in addition to Parvez, sold him the drugs.  Earlier, Nickell had tentatively identified Defendants' brother, Amin Issa, as the individual who had also sold him pseudoephedrine, saying he was not sure one way or the other.

4

packs, Parvez took each out of the box and placed them in a bag. Parvez told Nickell he would tell his brother to "start giving [Nickell] the good price."

Nickell arranged another transaction with Parvez for October 10, 2005, stating he wanted to purchase 36 separate packs of pseudoephedrine. During the transaction, Parvez remarked on why he removed the blister packs from the boxes before placing them in a bag, asking "[s]omebody catch you, you will get in trouble, you know?" Parvez then stated, "[s]ee, if you put in bag nobody will notice that, you know?" and, "[y]eah, see, somebody, even in [sic] the cops they won't even notice what it is you know?" When Nickell told Parvez, "[h]owever you want to do it," Parvez responded, "[y]eah, it's better for us, you know?" During the October 10 transaction, the men discussed Nickell's need for matches, with Nickell stating he was running out of red phosphorous. Parvez inquired, "[h]ow's business?" to which Nickell responded, "[b]usiness is good, a lot of, a lot of people are smoking dope."

The recording of the October 10 transaction also contains the following conversation:

Parvez:     What happens if they catch you here. You know, do you, how much, they don't (inaudible) kill you, or?

Nickell:    What, how much time do I do?

Parvez:     Yeah. They charge you (inaudible) or something like that?

5

Nickell:     Shoot, I don't want to find out.

\*                    \*                    \*

Parvez:     You just have to be careful, you know?

At the conclusion, Nickell remarked he could "make a big batch now" and Parvez laughed.

On November 7, 2005, Nickell, wired with a transmitter as before, returned to the store to buy Pseudo 60s and matchbooks following an earlier discussion with Parvez. Because neither brother was present, Nickell had a telephone conversation with Parvez, during which the latter promised to get the items later that night from another convenience store owned by Parvez's uncle and brother. At the conclusion of the telephone conversation, Parvez stated, "I scared, you know? I don't know. You don't scared, right, but I do scared, man."

Following Nickell's return later that night, Sohail arrived in his car, removed a large bag from the trunk, and entered the store. The matches and pseudoephedrine were placed on the floor, where Appellants and Nickell began counting them (approximately 6,000 tablets and 1,350 matchbooks). Nickell and Parvez had the following conversation, which Sohail, who was present in the store, claimed not to hear because, as Sohail put it, he was "looking at the novelty items, gift items, and the structure of the store:"

Parvez:     How much you going to make it, (inaudible) with that?

6

Nickell:    For this?

Parvez:     Yeah.

Nickell:    How much crystal meth?

Parvez:     How much you make it with that?

Nickell:    How much dollars or crystal meth?

Parvez:     Dollar amount, you know?

Nickell:    Oh shoot.  About four grand.

Parvez:     Oh shit.

                    *                    *                    *

Nickell:    Business is good brother?

Parvez:     Help me out man.

Nickell:    (Laughs)

Parvez:     You help me out, I'll help you out.

Parvez and Sohail were arrested that night.

In their testimony, Parvez and Sohail admitted the conduct established by the audiotapes but denied previously selling pseudoephedrine to Nickell, or having knowledge that it would be used to produce methamphetamine.  Sohail testified that November 7, 2005 was the first time he saw Nickell, but again, Sohail did not hear Nickell's conversation with Parvez.  While Parvez admitted to knowing Nickell as a regular customer, Parvez stated he agreed to provide the items Nickell

7

requested as a "wholesaler." Parvez claimed he did not use the cash register for the

transactions with Nickell, removed the pseudoephedrine from its packaging, and

made statements reflecting a knowledge of illegal activity all because Parvez

believed Nickell did not have a business license.

## B. DISCUSSION

Defendants raise eight arguments on appeal, and we consider them in turn.

*1.     Whether the Trial Court Abused its Discretion in Admitting Hearsay
       Testimony Regarding the Reasons for Sergeant Smith's Investigation*

Parvez contends the trial court abused its discretion in allowing Sergeant Smith

to testify that complaints of drug activity at the BP station prompted him to begin his

investigation, because the testimony affected Parvez's substantial rights.[4]

A district court's evidentiary ruling is reviewed for abuse of discretion.

United States v. Garcia-Jaimes, 484 F.3d 1311, 1320 (11th Cir. 2007) (citation

omitted). Moreover, evidentiary errors "do not constitute grounds for reversal

unless there is a reasonable likelihood that they affected the defendant's substantial

---

[4] Parvez also asserts (in his initial brief only) that admission of the contested testimony violated the Confrontation Clause, relying on Crawford v. Washington, 541 U.S. 36, 68 (2004) ("Where testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination."). He did not raise the claim below, and thus review is for plain error. See United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007) (citations omitted). Because admission of the disputed testimony did not contradict precedent or the explicit language of a statute, see United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003), and because Parvez cannot show that the out-of-court statements were testimonial in nature, the district court did not plainly err.

rights." United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990) (citation omitted). A claim not raised below is reviewed for plain error. Turner, 474 F.3d at 1275 (citation omitted).

Sergeant Smith testified concerning information he received from an informant that an individual identified as Chris Nickell was purchasing pseudoephedrine from the BP station and producing methamphetamine. The Government asserts, and the trial court agreed, that the testimony was not offered for its truth. Rather, the testimony was offered to show the effect the information had on the witness in beginning his investigation. Once concluding the testimony was not hearsay, the trial court also gave a limiting instruction, telling the jury not to consider the testimony as proving the truth of the matters asserted by others, but rather to show the effect it had on the listener.

Trial courts have an obligation to assess independently whether the ostensible non-hearsay purpose advanced by the proponent of the evidence is valid. See United States v. Sallins, 993 F.2d 344, 346 (3d Cir. 1993). And while police officers generally should be permitted to explain why they began an investigation, "the use of out-of-court statements to show background has been identified as an area of 'widespread abuse.'" Id. (quoting 2 McCormick On Evidence § 249, at 104 (4th ed. 1992)). Nevertheless, such evidence may be admitted "provided that it is simply background information showing the police officers did not act without

9

reason and, in addition, that it does not point specifically to the defendant." United States v. Vitale, 596 F.2d 688, 689 (5th Cir. 1979) (citations omitted).[5] Furthermore, if such evidence is admitted, a limiting instruction should be given. Id.; see also United States v. Vizcarra-Porras, 889 F.2d 1435, 1440 (5th Cir. 1989) (emphasizing that the district court repeatedly gave the jury limiting instructions regarding the use of the challenged testimony).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). We cannot say that the trial court abused its discretion in concluding the testimony offered was simply background information, although here, the Sergeant's testimony could have been limited.[6] The information did not directly point to Parvez, as it only identified the location of suspected drug activity, and it did not affect Parvez's substantial rights in light of the conversations captured on the audiotaped meetings with Nickell. See Hawkins, 905 F.2d at 1493.

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[6] There was no challenge to the Sergeant's motives or need for beginning his investigation, and the reasons motivating the Sergeant to investigate were hardly necessary to know.

2. *Whether the Trial Court Abused its Discretion in Limiting the Cross Examination of Chris Nickell[7]*

A district court's rulings on the permissible scope of cross-examination are reviewed for abuse of discretion. United States v. Jones, 913 F.2d 1552, 1564 (11th Cir. 1990) (citation omitted). Citing the prohibition on the use of extrinsic evidence to attack a witness' character for truthfulness under Rule 608 of the Federal Rules of Evidence,[8] the Government objected to questions posed to Nickell concerning an incident in which Nickell allowed a friend in the drug business to take a car from the dealership Nickell worked in and lied about it to his employer, and questions about Nickell's other sources for pseudoephedrine. The trial court sustained the Government's objections, and Parvez maintains the rulings were an abuse of discretion because they impaired the defense's ability to show Nickell had

---

[7] While Parvez raises as his second issue on appeal the failure to have bench conferences transcribed, and while admittedly proceedings in criminal cases (including bench conferences) should be recorded verbatim, see 28 U.S.C. § 753(b), the parties reached agreement on the reconstruction of the record pursuant to Federal Rule of Appellate Procedure 10, and Parvez does not explain how the reconstructed record prevents him from having a meaningful review of the remaining issues raised on appeal.

[8] Under Federal Rule of Evidence Rule 608(b),

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

11

other sources for the pseudoephedrine and set up Defendants as his source in order to protect his true sources.

As to the first claimed error, we find no abuse of discretion because Nickell admitted he "lied to everyone," including his mother, father, children and employers; therefore, Nickell's lie to his employer was merely cumulative evidence. See United States v. Arias-Izquierdo, 449 F.3d 1168, 1178 (11th Cir. 2006) ("'A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he can properly argue why the witness is less than reliable.'") (quoting United States v. Baptista-Rodriguez, 17 F.3d 1354, 1371 (11th Cir. 1994)). As to the second claimed error regarding Nickell's other sources, here, too, we find that any error would have been harmless because Nickell admitted to purchasing pseudoephedrine from other sources. See Olden v. Kentucky, 488 U.S. 227, 232-33 (1988) (per curiam) (reviewing court must determine "'whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt'") (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

3. *Whether Sohail's Acquittal on Count One Mandates Reversal of Parvez's Conviction for Conspiracy*

12

Sohail and Parvez were the only two people named in the Indictment as conspirators in Count One.[9]  Parvez maintains Sohail's acquittal on Count One mandates that his conviction for conspiracy be reversed.  This is a question of law that we review *de novo*.  See United States v. Gupta, 463 F.3d 1182, 1191 (11th Cir. 2006) (citation omitted).

It remains the law of this Circuit that "[c]onsistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand."  United States v. Andrews, 850 F.2d 1557, 1561 (11th Cir. 1988) (en banc).  Thus, the verdict in Count One stands, unless the evidence of a conspiracy is insufficient.[10]  For there to be a conspiracy, the evidence must show an agreement to achieve an unlawful objective, the defendant's knowing and voluntary participation in the conspiracy, and the commission of an act in furtherance of the agreement.  United States v. Brenson, 104 F.3d 1267, 1282 (11th Cir. 1997) (citations omitted).  In a two-person

---

[9] The trial court told the jury on several occasions that they could only consider whether Defendants conspired with one another; there was no constructive amendment of the charge in Count One, as Parvez asserts.

[10] We review *de novo* the claim that the evidence was insufficient to convict Parvez, viewing the evidence and reasonable inferences and credibility choices in the light most favorable to the Government.  See United States v. Anderson, 289 F. 3d 1321, 1325 (11th Cir. 2002) (citing United States v. De La Mata, 266 F.3d 1275, 1301 (11th Cir. 2001)).

13

conspiracy, as here, only the first element (an agreement) must be satisfied as to both parties.

Here, there was sufficient evidence from which a jury could find the existence of an agreement. Nickell expressly informed Parvez of the reasons for buying large quantities of pseudoephedrine. At a later time in their dealings, Nickell asked Parvez to inform whoever would be in the store in Parvez's absence about the purpose for Nickell's visits. Thereafter, whenever Parvez was absent, Nickell bought the pseudoephedrine in large quantities from Sohail without use of the cash register. Indeed, Parvez told his brother to "start giving" Nickell the "good price" after Nickell returned to the BP station following his arrest.

From Nickell's testimony and the conversation captured on audiotape, a reasonable inference could be drawn that the brothers agreed to achieve an unlawful objective. See, e.g., United States v. Farris, 77 F.3d 391, 394 (11th Cir. 1996) ("The existence of a conspiratorial agreement may be established through either direct or circumstantial evidence, such as inferences from the conduct of the alleged participants.") (citation omitted). Furthermore, the jury was permitted to consider Sohail's testimony, in which he denied involvement in or knowledge of a conspiracy, as substantive evidence of guilt. United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] statement made by a defendant, if disbelieved by the

14

jury, may be considered as *substantive evidence* of the defendant's guilt.") (emphasis in original) (footnote and citations omitted).

   4.   *Whether the Trial Court Erred in its Instructions to the Jury*

   Defendants challenge here, as they did below, the trial court's decision to give the jury a deliberate ignorance instruction. Parvez also argues for the first time on appeal that the trial court erred in using a "reasonable person" standard when defining "reasonable cause to believe" in relation to the substantive counts (Counts Two, Three and Four), and that it erred by constructively amending the Indictment by using the term "controlled substance" rather than methamphetamine. Preserved challenges to the district court's instructions are reviewed *de novo*. See United States v. Stone, 9 F.3d 934, 937 (11th Cir. 1993) (citation omitted). Claims of error in jury instructions not raised below are reviewed for plain error. See United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000) (citing Fed. R. Crim. P. 30, 52(b)).

   "A deliberate ignorance instruction is appropriate only when there is evidence in the record 'showing the defendant purposely contrived to avoid learning the truth.'" Stone, 9 F.3d at 937(quoting United States v. Barbee, 968 F.2d 1026, 1033 (10th Cir. 1992)). A deliberate ignorance instruction is proper when the evidence does not point to actual knowledge. See United States v. Schlei, 122 F.3d 944, 973 (11th Cir. 1997). Sohail asserts that because the Government's

15

evidence (the taped conversation between Parvez and Nickell discussing the production of methamphetamine, during which Sohail was physically present) points to actual knowledge, or no knowledge at all by Sohail, the deliberate ignorance instruction should not have been given.

We disagree. There was evidence supporting a finding of deliberate ignorance. Regarding the final transaction of November 7, the jury could have concluded Sohail was trying not to hear the conversation between Parvez and Nickell concerning the items Sohail had just delivered, as Sohail was looking at the "novelty items, gift items, and the structure of the store." The audiotaped conversations also could lead a jury to conclude that Parvez, while apprehensive, preferred not to know Nickell's purpose in buying large quantities of pseudoephedrine and matches. Even if the evidence would not support deliberate ignorance by Defendants, any error was harmless because the jury was instructed that a precondition to the instruction applying was proof beyond a reasonable doubt that Defendants deliberately kept themselves ignorant. See Stone, 9 F.3d at 938.

Parvez's unpreserved objections to the "reasonable person" and "reasonable cause to believe" instruction given[11] fail because no plain error is shown in the

_____

[11] The court gave the following instruction on the substantive counts:

> To have "reasonable cause to believe" that the listed chemical would be used to manufacture a controlled substance means the defendants have knowledge of the fact which, although not amounting to direct knowledge, would cause a

giving of the instruction, and in the use of a reasonable person standard, rather than an instruction that would have emphasized facts known to the Defendant, thereby calling attention to the Defendant's cultural differences.  See Prather, 205 F.3d at 1271; Lejarde-Rada, 319 F.3d at 1291 ("[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.") (citation omitted).

Parvez also raises for the first time on appeal the claim that the district court constructively amended the Indictment by charging the jury that they had to find Defendant "knew or had reasonable cause to believe that the chemicals would be used to manufacture a controlled substance," rather than stating methamphetamine, as the substantive offenses were charged.  Parvez relies on United States v. Narog, 372 F.3d 1243, 1249 (11th Cir. 2004), where the trial court's similar instruction was deemed to be a constructive amendment to the indictment, and the convictions reversed.  As the Government correctly notes, Narog was a preserved error case, and thus, here, Parvez must show any error affected his substantial rights.  See

---

reasonable person, knowing the same information, facts and circumstances, to reasonably conclude the listed chemical would be used to manufacture a controlled substance.

(emphasis added).

17

United States v. Rutherford, 175 F.3d 899, 906 (11th Cir. 1999) ("assertion that the government's proof and the court's instructions impermissibly resulted in a constructive amendment to the indictment [reviewed] for plain error" where it was not raised below).  The only controlled substance mentioned during the course of the trial was methamphetamine, and Parvez was convicted in Count One of a conspiracy involving the manufacture of a mixture and substance containing a controlled substance, methamphetamine.  There is no basis from which the jury could have convicted Parvez of offenses involving a controlled substance other than methamphetamine. Thus, Parvez has not shown his substantial rights were affected.

> 5.      *Whether the Trial Court Erred in Denying Sohail's Motion for Judgment of Acquittal*

We review *de novo* a defendant's claim that the evidence was insufficient to convict him, viewing the evidence and all reasonable inferences and credibility choices in the light most favorable to the Government.  Anderson, 289 F.3d at 1325 (citing De La Mata, 266 F.3d at 1301).

On October 6, 2005 Parvez stated he would inform his brother to *start* giving Nickell the "good price," and Nickell testified about an earlier conversation Nickell had with Parvez in which the former instructed Parvez to tell whoever would sell him the items in Parvez's absence the purpose of Nickell's visits to the BP station.

Nickell's transactions with Sohail also took place without use of the cash register, and Nickell stated he transacted purchases with the person he later identified as Sohail on four or five occasions. On the last occasion, Sohail delivered the large quantities of Pseudo 60s and matches (about 6,000 tablets and 1,350 matchbooks) but remained apart from his brother's conversations with Nickell, perusing the novelty items in the store.

Using the foregoing evidence, the jury could have found that Sohail distributed a listed chemical, "knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, that is a mixture and substance containing a detectable amount of methamphetamine." 21 U.S.C. § 841(c)(2). Moreover, Sohail's testimony, which included his denials of knowledge concerning Nickell's intended use of the pseudoephedrine, "if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." Brown, 53 F.3d at 314 (emphasis in original) (footnote and citations omitted). We find no error in the denial of the motion for judgment of acquittal.

6.    *Whether the Trial Court Abused its Discretion in Denying Sohail's Motion for Severance[12]*

_____

[12] Parvez did not request that the district court sever Count Five from the remaining counts. Parvez's argument on appeal that the court erred by not severing Count Five is therefore barred, see United States v. Drum, 733 F.2d 1503, 1508 (11th Cir. 1984) (abrogated on other grounds, Dowling v. United States, 473 U.S. 207 (1985)), particularly because we also find no

19

Before trial, the district court denied Sohail's motion to sever his case from that of Parvez. The decision to deny a severance "is committed to the sound discretion of the trial court and can only be overturned for an abuse of discretion." Garcia-Jaimes, 484 F.3d at 1320 (quoting United States v. Cross, 928 F.2d 1030, 1037 (11th Cir. 1991)). The trial court instructed the jury that "each charge and the evidence pertaining to it must be considered separately," and "the case of each defendant should be considered separately and individually." There is nothing to indicate the jury did not follow these instructions, nor are we persuaded that joinder of Count Five (charging illegal entry as to Parvez) resulted in specific prejudice to Sohail.

7. *Whether the Trial Court Considered the Aberrant Nature of Sohail's Conduct When Imposing Sentence*

Sohail asserts the trial court erred by not considering whether he was entitled to a variance based on aberrant behavior under U.S.S.G. § 5K2.20, and that his sentence is procedurally unreasonable because the district court did not consider his aberrant behavior as a basis for a variance under 18 U.S.C. § 3553(a). See United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006) (noting procedurally unreasonable sentences are sentences that are not the product of the procedure announced in United States v. Booker, 543 U.S. 220 (2005)). Contrary

---

manifest injustice resulted from the joinder.

20

to Sohail's contention, the district court explicitly considered the aberrant nature of Sohail's behavior in assessing the advisory Guidelines range, because the court had the benefit of Sohail's sentencing memorandum, containing the aberrant behavior argument. Furthermore, the district court indicated it considered the section 3553(a) factors in formulating Sohail's sentence, and section 3553(a)(5) requires the court to consider, among other things, the policy statement concerning aberrant behavior departures. Without deciding whether Sohail properly preserved his objections below,[13] we conclude the arguments fail under *de novo* and reasonableness standards. See United States v. Watkins, 477 F.3d 1277, 1279 (11th Cir. 2007) (court reviews district court's application of the guidelines *de novo*); United States v. Talley, 431 F.3d 784, 785 (11th Cir. 2005) (a sentence is reviewed for reasonableness) (citing Booker, 543 U.S. at 260).

## C.  CONCLUSION

For the foregoing reasons, we **AFFIRM**.

---

[13] The Government maintains Sohail did not raise before the trial court the claim that his sentence failed to account for the "aberrant conduct" factor.