[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-16321
Non-Argument Calendar

_____

D. C. Docket No. 05-00068-CR-RWS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

UDO UDO EKPO, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 21, 2008)**

Before TJOFLAT, BLACK and FAY, Circuit Judges.

PER CURIAM:

Udo Udo Ekpo, Jr. appeals his conviction and 27-month sentence for 11 counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2. First, as to his conviction, Ekpo argues that there was insufficient evidence to support a jury instruction on deliberate ignorance because the evidence demonstrated that he did not believe that he was doing anything wrong, and that he did not learn of the fraudulent claims until well after they had been submitted. Accordingly, Ekpo asserts that there was no evidence to suggest that he deliberately attempted to avoid the truth.

Second, as to his sentence, Ekpo argues that the district court clearly erred by finding that he should not receive any credit against the calculated loss amount for the motorized scooters, also known as power operated vehicles ("POV"), that he sold to the Medicare beneficiaries in the transactions at issue, asserting that the evidence shows that he did not intend for Medicare to suffer a complete loss. Third, Ekpo argues that the district court erred by applying an enhancement for obstruction of justice because it relied on the jury's guilty verdict, and did not make an independent factual finding that he had committed perjury. Fourth, Ekpo argues that his sentence is procedurally unreasonable because the district court improperly applied a presumption in favor of a sentence within the advisory guideline range, failed to consider the sentencing factors enumerated in 18 U.S.C. § 3553(a), and failed to explain its reasons for imposing a sentence within the

2

guideline range. Ekpo also argues that his sentence is substantively unreasonable because the court failed to consider the § 3553(a) factors separately and apart from the Sentencing Guidelines. Last, Ekpo argues that, by considering 24 additional allegedly fraudulent transactions not charged in the indictment, or found by the jury beyond a reasonable doubt, the district court increased his sentence above the permitted statutory maximum in violation of his Sixth Amendment rights.

For the reasons set forth more fully below, we affirm Ekpo's sentence and conviction.

Ekpo owned a business, V & A Services, d/b/a V & A Medical Supplies ("V &A"), which he enrolled as a durable medical equipment ("DME") supplier with Medicare. In the enrollment application, Ekpo agreed that V & A would submit truthful, accurate, and complete Medicare claims, and further agreed that the company would be responsible for all claims submitted by its employees or agents. Ekpo also promised that V & A would research and correct claim discrepancies. Medicare is authorized to pay for medically necessary equipment such as power wheelchairs and accessories that are provided to beneficiaries by authorized DME suppliers, such as V & A, who are enrolled with Medicare.

An FBI investigation revealed that Ekpo caused false claims for power wheelchairs to be submitted to Medicare on behalf of 12 different beneficiaries, when, in actuality, POVs were provided to those beneficiaries instead. POVs were

assigned a specific Medicare billing code, and payments for those claims were limited to $1,809.43.  Payments for power wheelchairs, however, exceeded $4,000.00.  In addition to the false claims for power wheelchairs, Ekpo also caused false claims for wheelchair accessories to be submitted to Medicare in order to recover other expenses for which he believed V & A had not properly been reimbursed.  Moreover, Medicare made 24 additional payments for fraudulent claims submitted by V & A, resulting in a total loss amount of $164,590.43.

## I.

A challenge to a jury instruction presents a question of law that we review de novo.  United States v. Stone, 9 F.3d 934, 937 (11th Cir. 1993).  A deliberate ignorance instruction is not appropriate where the evidence only points to either actual knowledge or no knowledge on the part of the defendant.  Such an instruction "is appropriate only when there is evidence in the record showing the defendant purposely contrived to avoid learning the truth."  Id. (quotation omitted).

An erroneous deliberate ignorance instruction is not reversible error per se, however.  When a district court commits error in giving a deliberate ignorance instruction because there is insufficient evidence to support it, the error can nonetheless be harmless depending on the wording of the instruction.  Id. at 937-38.  The error is harmless as a matter of law where (1) "the jury was clearly instructed that a precondition to its application of the deliberate ignorance

4

instruction was proof beyond a reasonable doubt that [the defendant] deliberately kept himself ignorant," and (2) the evidence was sufficient to support a conviction based on actual knowledge, but not necessarily overwhelming. Stone, 9 F.3d at 937-39. This is because juries are presumed to follow the judge's instructions. Id. at 938.

Here, the district court properly instructed the jury that it had to find that Ekpo was deliberately ignorant beyond a reasonable doubt, and it is presumed that the jury followed the judge's instructions. See id. at 938-39. Moreover, the district court instructed the jury on actual knowledge, and there is sufficient evidence to support a conviction based on actual knowledge.

At trial, Ekpo denied that he had any knowledge of Medicare billing procedures and stated that his son, Ini, was responsible for submitting all of V & A's claims to Medicare electronically. He also indicated that he did not supervise his son's work because he lacked expertise in Medicare billing and did not know any of the billing codes. Ekpo denied knowledge of the fraudulent claims submitted by his son and insisted that he did not learn about those claims until well after the fact, when he received notice that some of the beneficiaries' Medicare summaries indicated that they were billed for items they did not receive. In contrast, Bridgett Flournoy, a former V & A employee, testified that she confronted Ekpo about the items that were billed to Medicare, but not delivered to

the beneficiaries, and indicated that Ekpo stated that he was trying to recover some of the money he had spent on purchasing, delivering, and servicing a wheelchair to a particular customer. Flournoy's testimony was corroborated by a recorded telephone conversation she had with Ekpo, who acknowledged that delivering a POV to a beneficiary, but billing Medicare for a power wheelchair could "easily get somebody into trouble," and further admitted that "[a]ll [he] had wanted was to find anywhere to get money back . . . . Money that [he] had spent on [the customer's] chair."

Moreover, on cross-examination, Ekpo admitted that he directed employee Ime Ikpe to prepare certificates of medical necessity and delivery tickets for power wheelchairs rather than the POVs that were provided to the beneficiaries, and expressed concern that Ikpe had recorded that the beneficiaries had received scooters on delivery tickets and other documents. Ekpo also admitted that he directed Ikpe to include items such as footrests and seat belts on the delivery tickets, even though he knew that POVs did not come with such accessories. In addition, Ekpo acknowledged that there were resources available to DME suppliers to assist them with Medicare questions, but stated that he did not take advantage of those resources.

When a defendant chooses to testify, we have held that "a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of

the defendant's guilt. . . . To be more specific . . . when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) (quotation omitted). Because the facts established at trial support a finding that Ekpo was either actually aware of the fraudulent claims that were being submitted to Medicare, or, alternatively, consciously avoided learning about Medicare rules and regulations so as to avoid learning about those claims, the district court did not clearly err in instructing the jury on both theories of actual knowledge and deliberate ignorance. Accordingly, we affirm as to this issue.

II.

Under U.S.S.G. § 2B1.1, the base offense level for a theft offense involving fraud or deceit is six. Where the resulting loss exceeds $5,000, the base offense level increases. U.S.S.G. § 2B1.1(b)(1). A loss of more than $120,000 but less than $200,000 adds 10 levels. U.S.S.G. § 2B1.1(b)(1)(F). In calculating loss amounts, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). "Actual loss" is the reasonably foreseeable pecuniary harm resulting from the offense, and "intended loss" is the pecuniary harm that was intended to result from the offense. U.S.S.G. § 2B1.1, comment. (n.3(A)(i) and (ii)).

We review the district court's amount-of-loss determination for clear error.

United States v. Cabrera, 172 F.3d 1287, 1292 (11th Cir. 1999). The government bears the burden of establishing the attributable loss by a preponderance of the evidence. See United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004) (addressing the applicability of Guidelines provisions that increase a defendant's offense level in the context of an offense involving counterfeit immigration stamps). "The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." Id. "The sentencing guidelines recognize that often the amount of loss caused by fraud is difficult to determine accurately. Thus, courts may reasonably estimate that amount." United States v. Miller, 188 F.3d 1312, 1317 (11th Cir. 1999). However, "[w]hile estimates are permissible, courts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997).

The record indicates that Ekpo did not and does not now dispute that Medicare actually paid claims for power wheelchairs and accessories totaling $164,590.43. Rather, Ekpo asserts that he did not intend for Medicare to suffer a complete loss as a result of his fraudulent conduct and contends that, as a result, the court erred by failing to reduce the loss amount based on what Medicare would have paid for the POVs that were actually provided to the beneficiaries. The

8

application notes to U.S.S.G. § 2B1.1 provide that the loss amount is to be reduced by the amount of money or the fair market value of property or services rendered that is <u>returned</u> to the victim before the offense was detected. U.S.S.G. § 2B1.1, comment. (n.3(E)(i)). Because there is no evidence in the record to show that V & A returned any of the money it received from Medicare for any of the claims at issue, the district court did not clearly err in refusing to apply a credit to the loss amount for the value of the POVs that were distributed. Similarly, there is no evidence in the record to show that the beneficiaries would have been medically eligible to receive POVs. Although the district court did not expressly mention the terms "actual" and "intended" loss in overruling Ekpo's objection, it indicated that it considered the difference between the two amounts and found that the actual loss was greater. For all these reasons, the district court did not clearly err by finding that Ekpo was responsible for a loss amount of $164,590.43, and we affirm as to this issue.

### III.

For an obstruction of justice enhancement, we review the district court's findings of fact for clear error and the application of the Guidelines to those facts <u>de novo</u>. <u>United States v. Massey</u>, 443 F.3d 814, 818 (11th Cir. 2006). "For a factual finding to be 'clearly erroneous,' this court, 'after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been

committed.'" United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004) (citation omitted). The Guidelines provide for a two-level increase in the offense level

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . . .

U.S.S.G. § 3C1.1. Perjury is among the examples of conduct warranting this enhancement. Id., comment. (n.4(b)). "Perjury, for purposes of applying this enhancement, has been defined by the United States Supreme Court as 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002) (quoting United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)).

Four elements are required to make a perjury finding: "(1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory." Singh, 291 F.3d 763 n.4. While specific findings as to each instance of a materially false statement are preferable, we can affirm if "the district

10

court makes a general finding of obstruction of justice that encompasses all of the factual predicates of perjury." United States v. Vallejo, 297 F.3d 1154, 1168 (11th Cir. 2002) (quotation omitted).

Here, the district court did not clearly err in applying the obstruction enhancement. We have stated that the district court may make a general obstruction finding, as here, where it upheld the obstruction enhancement specifically because it found that there were statements that were wholly irreconcilable with the jury verdict. See Vallejo, 297 F.3d at 1168. The court was making a finding that Ekpo's testimony concerning his knowledge of the fraudulent claims for wheelchairs and accessories constituted perjury, by determining that it was irreconcilable with the jury verdict, similar to the court in Vallejo, which found that the defendant had perjured himself because statements that he made were contradicted by other witnesses. Additionally, the other requirements of perjury were met: Ekpo made the statements at trial, under oath; the statements were material, as they applied to his knowledge of the fraudulent claims; and the court clearly did not believe that these statements were the result of confusion or a faulty memory. See Singh, 291 F.3d at 763 n.4. Moreover, Ekpo's testimony was directly contradicted by Flournoy, who stated that he directed her to use the same codes for power wheelchairs and POV's, provided her with pre-printed CMNs to submit to the beneficiaries' doctors, and admitted that he billed

11

Medicare for accessories in order to recover money that he had lost in the sale of a wheelchair. Accordingly, the district court did not clearly err in applying a two-level enhancement to Ekpo's offense level and we affirm as to this issue.

IV.

We review the final sentence imposed by the district court for reasonableness. United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005). Unreasonableness may be procedural, when the court's procedure does not follow Booker's[1] requirements, or substantive. See Gall v. United States, No. 06-7949, slip op. at 12 (U.S. Dec. 10, 2007); United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006). The Supreme Court has explained that a sentence may be procedurally unreasonable if the district court improperly calculates the guideline imprisonment range, treats the Guidelines as mandatory, fails to consider the appropriate statutory factors, bases the sentence on clearly erroneous facts, or fails to adequately explain its reasoning. Gall, No. 06-7949, slip op. at 12. The Court also has explained that the substantive reasonableness of a sentence is reviewed under an abuse-of-discretion standard. Id. It has suggested that review for substantive reasonableness under this standard involves inquiring whether the factors in 18 U.S.C. § 3553(a) support the sentence in question. Id. at 17.

When imposing a sentence, the district court must first correctly calculate

---

[1] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

12

the Guidelines.  United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).

Second, the district court must consider the following factors to determine a

reasonable sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

Id. (citing 18 U.S.C. § 3553(a)).  While the district court must consider the

§ 3553(a) factors, it is not required to discuss each factor.  Id.  Instead, we have

held that an explicit acknowledgment that the district court has considered the

defendant's arguments and the § 3553(a) factors will suffice.  United States v.

Scott, 436 F.3d 1324, 1329-30 (11th Cir. 2005); see also Rita v. United States, 551

U.S. __, 127 S.Ct. 2456, 2469, 168 L.Ed.2d 203 (2007) (holding that the

defendant's sentence was reasonable when the district court considered the parties'

arguments and  provided a reasoned basis for its choice of sentence).

"[T]here is a range of reasonable sentences from which the district court may

choose" and the burden of establishing that the sentence is unreasonable in light of

the record and the § 3553(a) factors lies with the party challenging the sentence.

Talley, 431 F.3d at 788. We have held that a sentence within the guidelines range is neither per se reasonable, nor entitled to a presumption of reasonableness. See id. at 786-88; Hunt, 459 F.3d at 1185. However, the Supreme Court has held that, in reviewing sentences for reasonableness under 18 U.S.C. § 3553(a), a federal appellate court may apply a presumption of reasonableness to a district court sentence imposed within the guideline range. Rita, 551 U.S. at ___, 127 S.Ct. at 2462. Nevertheless, it appears that, even in light of Rita, our previous holdings remain intact. United States v. Campbell, 491 F.3d 1306, 1313 n.8 (11th Cir. 2007).

With regard to the procedural reasonableness of Ekpo's sentence, the district court imposed a procedurally reasonable sentence. See Gall, No. 06-7949, slip op. at 12; Hunt, 459 F.3d at 1182 n.3. The district court acknowledged its obligation to consider the advisory Sentencing Guidelines, along with the § 3553(a) factors, in fashioning Ekpo's sentence. See Gall, No. 06-7949, slip op. at 12. Moreover, the record demonstrates that the district court correctly calculated the advisory guideline range and considered the sentencing factors set forth in § 3553(a), specifically, the nature and seriousness of the offense, Ekpo's personal history and characteristics, and the need to provide Ekpo with medical care. See id.; 18 U.S.C. § 3553(a)(1) and (5). The district court further considered the parties' arguments concerning the sentence to be imposed, and sufficiently explained its reasons for

imposing the sentence.  <u>Gall</u>, No. 06-7949, slip op. at 12.

To the extent Ekpo argues that the district court improperly applied a presumption of reasonableness or effectively applied that Guidelines in a mandatory fashion, when viewed in the context of the sentencing proceeding as a whole, the district court's statements indicate that it understood that the guidelines were advisory, and that, while it had discretion to depart, it did not find that the facts of the case justified a departure.  Although the district court may or may not have confused the concept of a downward departure pursuant to the Sentencing Guidelines with the concept of a downward variance pursuant to § 3553(a), any possible  error arising from this confusion was harmless because there is no evidence to show that Ekpo suffered prejudice as a result.

Ekpo also has not established that his sentence is substantively unreasonable.  <u>See</u> <u>Gall</u>, No. 06-7949, slip op. at 12; <u>Hunt</u>, 459 F.3d at 1182 n.3.  Ekpo's 27-month sentence was at the low-end of the advisory guideline range, and well below the statutory maximum sentence of 10 years' imprisonment.  <u>See</u> 18 U.S.C. § 1347.  The record indicates that the district court considered the nature and seriousness of the instant offense, along with Ekpo's lack of criminal history, his family circumstances, his age, and his health, in determining that a Guidelines sentence was appropriate.  Therefore, the § 3553(a) factors supported the district court's sentence, and the district court did not abuse its discretion.  <u>See</u> <u>Gall</u>, No.

06-7949, slip op. at 12, 20. Thus, viewing the sentencing proceeding as a whole, Ekpo's sentence is reasonable, and we affirm as to this issue.

V.

Because Ekpo failed to raise a constitutional challenge to his sentence in the district court, we review his claim only for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005). Under plain error review, "[a]n appellate court may not correct an error the defendant failed to raise in the district court unless there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Id. (quotations and citations omitted).

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63. In Booker, the Supreme Court extended its Apprendi line of cases to declare the mandatory application of the Sentencing Guidelines to be unconstitutional, and reaffirmed its holding in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence

16

exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 543 U.S. at 232-33, 244, 125 S.Ct. at 749-50, 756.

Under Booker, a district court may commit both constitutional and statutory error. United States v. Mathenia, 409 F.3d 1289, 1291 (11th Cir. 2005). A Booker constitutional error violates an individual's Sixth Amendment right to trial by jury where a judge enhances an individual's sentence based solely on judicially found facts pursuant to a mandatory guidelines system. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). There is no constitutional error where a sentence is enhanced based on judicial fact-finding beyond the facts admitted by the defendant or found by the jury in a non-mandatory system. Rodriguez, 398 F.3d at 1300. Booker statutory error is application of the guidelines as mandatory, rather than advisory. Mathenia, 409 F.3d at 1291.

Here, no plain error exists in this case as to Ekpo's Sixth Amendment argument because the first prong of the plain error test is not satisfied. The district court did not commit constitutional or statutory error under Booker because it sentenced Ekpo under an advisory guidelines system. Rodriguez, 398 F.3d at 1300; Mathenia, 409 F.3d at 1291. There was also no error under Apprendi because the district court did not sentence Ekpo above the statutory maximum of 10 years' imprisonment, as authorized by 18 U.S.C. § 1347, for health care fraud.

17

See Booker, 543 U.S. at 244, 125 S.Ct. at 756.  Because there was no Booker error,

there is no reason to reach the remaining three prongs of the plain error test.

Moreover, as discussed above, Ekpo has failed to establish that his sentence of 27

months' imprisonment was unreasonable.  Accordingly, we affirm as to this issue.

In light of the foregoing, Ekpo's sentence and conviction are

**AFFIRMED.**