[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11479
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20158-RNS-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RAYMUNDO GARCIA-BENITES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 11, 2017)

Before HULL, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

Raymundo Garcia-Benites appeals his conviction for possession with intent

to distribute 3,4-methylenedioxymethcathinone ("MDMC"), in violation of 18

U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(c).  He asserts that the government's evidence was insufficient to prove that he knowingly aided and abetted his son, Raymundo Garcia ("Junior"), in committing a possession offense by providing the purchase money and serving as a lookout during the drug transaction.  He also argues the district court erred in giving a deliberate ignorance jury instruction, as the evidence did not support an inference that he was aware of a high probability of the existence of the deal's underlying facts and purposely contrived to avoid learning all the facts.  Having thoroughly reviewed the record,[1] we conclude that the evidence sufficed to support Garcia-Benites's conviction, and that any error the district court may have committed in providing a deliberate ignorance jury instruction was harmless.  We thus affirm Garcia-Benites's conviction.

## I.    STANDARD OF REVIEW

"[I]n reviewing a conviction for sufficiency of the evidence, we examine the evidence *de novo* in the light most favorable to the government."  *United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998).  We will overturn a conviction due to insufficient evidence only if "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Almanzar*, 634 F.3d 1214, 1221 (11th Cir. 2011) (internal quotation marks omitted).  "The jury is free to choose among reasonable inferences to be drawn from the evidence

---

[1] Because the facts of the case and our analysis of the sufficiency of evidence challenge are so intertwined, we combine our factual recitation with our analysis, below.

2

presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury." *Id.* We assume the jury made all "credibility choices . . . in the way that supports the verdict." *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006).

## II.    ANALYSIS

It is "unlawful for any person knowingly or intentionally" to "possess with intent to . . . distribute . . . a controlled substance." 21 U.S.C. § 841(a)(1). One who aids or abets the commission of "an offense against the United States . . . is punishable as a principal." 18 U.S.C. § 2. Aiding and abetting is not a separate crime, "but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) (internal quotation marks omitted). "To prove guilt under a theory of aiding and abetting, the Government must prove:  (1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005) (internal quotation marks omitted).

Garcia-Benites argues that the district court erred in denying his motion for judgment of acquittal. He says that the only evidence of his participation in

3

Junior's drug deal was his presence at it, and that "mere presence at the scene of a crime, with nothing more," is not "evidence that [he was] an aider or abetter." *United States v. Martinez*, 555 F.2d 1269, 1271 (5th Cir. 1977).[2]  Here, the jury had ample evidence from which to find that Garcia-Benites was no mere spectator to the drug transaction, but rather, deliberately engaged in specific acts to facilitate it.[3]  It is undisputed that Junior possessed MDMC with intent to distribute it.  The issue thus is whether the government's evidence sufficed to allow a rational trier of fact to find beyond a reasonable doubt that Garcia-Benites intentionally facilitated that offense.  We conclude that it did.

## A.    The Evidence Sufficed to Prove that Garcia-Benites Contributed to and Furthered Junior's Possession Offense.

The evidence, viewed in the light most favorable to the government, sufficed to prove beyond a reasonable doubt that Garcia-Benites contributed to and furthered Junior's possession offense.  *Hernandez*, 433 F.3d at 1332-33.  The government established that Garcia-Benites both provided the purchase money that Junior used to buy the MDMC and conducted surveillance during the transaction.

---

[2] In *Bonner v. City of Prichard*, we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.  661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

[3] The jury also was instructed that mere presence at a crime scene does not give rise to liability, and "we must presume that juries follow their instructions."  *United States v. Zitron*, 810 F.3d 1253, 1258 (11th Cir. 2016) (internal quotation marks omitted).

First, the evidence sufficed to show that Garcia-Benites provided Junior's purchase money for the MDMC sale. Junior and Special Agent Joe Kilmer of the Drug Enforcement Agency (DEA) each testified that a confidential informant from whom Junior sought to purchase MDMC asked Junior, "did you tell your dad if he gets two or more [the price] will drop?" (Docs. 112 at 140, 113 at 36.)[4] Junior responded, "yeah, and I am waiting on you and—I am waiting on you. I'm the man. He is just supplying the money so I can move them. I'm the one that is shaking it." The informant previously had told the DEA that Garcia-Benites was involved in the drug transaction.

After his conversations with the informant, Junior contacted Edwin Pagan, an undercover officer with the Coral Gables Police Department, and inquired about purchasing two kilograms of MDMC for $5,000 apiece. Pagan testified that he and Junior spoke several times over the following weeks and arranged a meeting to consummate the transaction. He also testified about what happened the day the deal occurred. Junior met Pagan in the parking lot of La Perla Restaurant in Miami. Junior got into Pagan's truck, and Pagan showed Junior a backpack containing the MDMC and asked to see the money. Junior responded that he did not have the money; Pagan insisted Junior show him the money before proceeding with the deal. Pagan testified that Junior then returned to his vehicle and called his

---

[4] Unless otherwise noted, all citations to "Doc. __" refer to the numbered docket entries on the district court docket.

father, speaking for several minutes.  Garcia-Benites drove his SUV[5] into an open parking space right next to Pagan's truck,[6] sandwiching Pagan between his and his son's vehicles so tightly that Pagan could not have fully opened his door.  Junior reentered Pagan's truck, and then walked over to his father.  The two spoke, and Garcia-Benites handed his son a small item.  Junior returned to Pagan's truck and gave Pagan a package containing $5,000, the agreed-upon price for one kilogram of MDMC.  Junior told Pagan that if the drugs' quality was to his liking, he would pay another $5,000 for the second kilogram.

After Garcia-Benites and Junior were arrested, police officers found a box containing about $5,000 in the center console of Garcia-Benites's SUV.  In his post-arrest statement, Junior acknowledged that his father had given him the money to purchase the MDMC.  Garcia-Benites denied having given Junior the purchase money, asserting that Junior placed it in his SUV without his knowledge.  But the jury was not obliged to believe Garcia-Benites's account.  *Almanzar*, 634 F.3d at 1221.  Based on the evidence at trial, a reasonable trier of fact could have

---

[5] Although evidence introduced at trial suggested that the vehicle in fact belonged to another person, Garcia-Benites was driving it; we refer to it as Garcia-Benites's SUV for clarity's sake.

[6] Garcia-Benites asserts that he left an empty space between his SUV and Pagan's truck. Pagan testified otherwise, and we assume the truth of his testimony given our obligations to view the evidence "in the light most favorable to the government," *Toler*, 144 F.3d at 1428, and assume the jury made all credibility determinations "in the way that supports the verdict," *Thompson*, 473 F.3d at 1142.

found beyond a reasonable doubt that Garcia-Benites contributed to and furthered Junior's offense by providing the purchase money for the MDMC transaction.

Second, based on this evidence a jury could have inferred that Garcia-Benites participated in the transaction to enhance his surveillance of the situation and protect his son—conduct that can establish aiding and abetting liability. *See, e.g.*, *United States v. Pareja*, 876 F.2d 1567, 1570 (11th Cir. 1989) ("The acts . . . committed to further the crime included . . . telephoning her sister to warn her that law enforcement officers were coming up."). As described above, Garcia-Benites was present in La Perla's parking lot while his son executed a drug deal.[7] Pagan testified that when he arrived, he observed Garcia-Benites sitting in his SUV in a parking space across from Junior's vehicle; Garcia-Benites watched Pagan pull into the parking lot. While the transaction was underway, Garcia-Benites moved his SUV across the parking lot into a space immediately adjacent to Pagan's truck, squeezing Pagan's truck between his SUV and Junior's vehicle. Garcia-Benites claims he moved his SUV to purchase cigarettes, but the jury was free to reject this explanation. *See Almanzar*, 634 F.3d at 1221. He then exited his SUV, stood outside Pagan's truck, and made eye contact with Pagan. He gave Junior an item and then remained outside, looking around at the surrounding scene, including at Pagan. This evidence sufficed to prove that Garcia-Benites surveilled the scene,

---

[7] Junior initially told the police he had invited his father to the restaurant, albeit purportedly to eat.

7

thereby contributing to and furthering Junior's offense.  *Hernandez*, 433 F.3d at 1333.

**B.    The Evidence Sufficed to Prove that Garcia-Benites Acted with Intent to Facilitate Junior's Offense.**

The evidence also sufficed to prove intent.  Garcia-Benites and Junior made eight phone calls to one another in the two hours prior to the drug transaction. These calls were brief—the longest one lasted 34 seconds, with at least six calls lasting between 9 and 14 seconds apiece.  Although Garcia-Benites denied having made any calls to Junior, the government introduced a report based on data it extracted from Junior's cell phone that showed the calls had taken place, as well as testimony from the DEA technical operations group employee who created the report.  Junior's testimony also contradicted his father's claim.  The jury reasonably could have inferred, based on the calls' frequency and duration, that Garcia-Benites and Junior were coordinating with one another in advance of the deal.

And indeed, Garcia-Benites's actions appeared well-coordinated with Junior's throughout the transaction.  He was present in La Perla's parking lot at precisely the time the deal took place,[8] surveilling the surrounding area from his

---

[8] Garcia-Benites claimed that his presence at the restaurant was a pure coincidence, but Junior at one point stated that he had invited his father there.  Garcia-Benites also asserted that he was sitting in his SUV when Pagan arrived because it was not safe to drive after eating, but again, the jury was not obliged to believe this explanation.  *Almanzar*, 634 F.3d at 1221.

SUV when Pagan arrived, and continued to look at Pagan over the course of the transaction. Junior called his father as the deal was underway, right after Pagan insisted that Junior show him the purchase money. Junior testified first that he had dialed his father's phone number intentionally, but later said he had done so accidentally. The jury reasonably could have inferred that their conversation concerned the unfolding transaction. The jury also could have inferred that Garcia-Benites moved his SUV across the parking lot to a space adjacent to Pagan's truck to pass his son the purchase money, as well as to serve as a lookout and provide protection; again, it was not obliged to believe Garcia-Benites's explanation for why he moved his SUV. *Id.* Garcia-Benites and Junior then spoke face-to-face, and Garcia-Benites handed his son an item. Junior, who moments ago had told Pagan that he did not have the money, then returned to Pagan's truck with $5,000. Police later found another $5,000 in Garcia-Benites's SUV. The jury could have inferred that Garcia-Benites had the correct amount of cash on hand because he knew the deal's terms.[9]

The government's evidence sufficed to prove beyond a reasonable doubt that Garcia-Benites intentionally aided the commission of Junior's possession offense.

---

[9] Moreover, although Garcia-Benites denied knowing that the purchase money was in his SUV or handing it to Junior, Junior admitted in his post-arrest statement that his father both knew the money was in his SUV and passed it along to him. The jury was entitled to credit these admissions. *See Almanzar*, 634 F.3d at 1221.

9

The district court thus did not err in denying Garcia-Benites's motion for judgment of acquittal.[10]

## C.    The District Court's Error, If Any, in Granting the Government's Request for a Deliberate Ignorance Jury Instruction Was Harmless.

Finally, Garcia-Benites argues that the district court erred in giving the jury a deliberate ignorance instruction. We need not decide whether the district court erred in instructing the jury; even assuming it did, such error was harmless.

"[D]eliberate ignorance of criminal activity [i]s the equivalent of knowledge." *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000) (internal quotation marks omitted). Thus, "the knowledge element of a violation of a criminal statute can be proved by demonstrating . . . deliberate ignorance." *Id.* A district court may instruct the jury as to deliberate ignorance "when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1237 (11th Cir. 2009) (internal quotation marks omitted). A district court "should not instruct the jury on

---

[10] Garcia was also charged with conspiracy, but the jury was unable to reach a verdict on that charge. "[W]hen the conspiracy and substantive charges derive from separate statutes, the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses because the charge for conspiracy requires an element not required by the substantive offense: proof of an agreement." *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1382 (11th Cir. 2011) (emphasis and internal quotation marks omitted); *compare* 18 U.S.C. § 2 (aiding and abetting liability) *with id.* § 371 (conspiracy). The jury's failure to convict Garcia-Benites of conspiracy thus does not bear on his possession with intent to distribute conviction.

deliberate ignorance," however, "when the relevant evidence points only to *actual knowledge*, rather than deliberate avoidance." *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008) (internal quotation marks omitted).

Harmless error analysis applies to erroneously-given deliberate ignorance jury instructions. *United States v. Stone*, 9 F.3d 934, 941 (11th Cir. 1993). We presume the jury did not convict "on a deliberate ignorance theory for which there was insufficient evidence" so long as (1) the instruction "clearly stated the proper legal standards for the jury to apply, and . . . did not apply if there was insufficient evidence to prove deliberate ignorance beyond a reasonable doubt," *id.* at 941-42, and (2) "the jury was also instructed that it could convict based on a theory of actual knowledge," and "there was sufficient evidence to support the convictions under that theory," *United States v. Rivera*, 944 F.2d 1563, 1572 (11th Cir. 1991).

The district court's deliberate ignorance instruction stated the proper legal standards for the jury to apply and, by its own terms, required proof beyond a reasonable doubt that Garcia-Benites deliberately avoided learning about the MDMC deal. The district court also instructed the jury that it could convict Garcia-Benites based on an actual knowledge theory. As explained above, the evidence sufficed to support Garcia-Benites's possession with intent to distribute conviction under an actual knowledge theory. Accordingly, any error that the

11

district court may have committed in instructing the jury as to a deliberate ignorance theory was harmless.

## III.    CONCLUSION

For the foregoing reasons, we affirm Garcia-Benites's conviction.

**AFFIRMED.**